IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

JUN 27 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| NICHOLAS MARTIN | ) |
| Plaintiff, | ) |
| vs. | ) |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS; VANTAGE SOURCING, LLC; MIRACLE FINANCIAL, INC.; and CREDIT BUREAU OF NAPA COUNTY, INC. d/b/a CHASE RECEIVABLES | ) |
| Defendants. | ) |

12cv5147
Judge Ronald A. Guzman
Magistrate Sheila M. Finnegan

## COMPLAINT

### INTRODUCTION

1.     Plaintiff Nicholas Martin, proceeding *pro se*, brings this action to secure redress against defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and implementing regulations and orders, and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). Plaintiff also requests that this court issue a declaratory judgment.

2.     Plaintiff alleges that a wireless phone carrier attempted to charge plaintiff fees that were not contemplated by way of agreement or contract. The wireless phone carrier then hired debt collectors who violated laws in their attempts to collect a debt that wasn't actually due and owing.

1

**JURISDICTION AND VENUE**

3.     This Court has federal question jurisdiction over plaintiff's FDCPA and TCPA claims pursuant to 28 U.S.C. §1331. This court has supplemental jurisdiction over plaintiff's request for a declaratory judgment pursuant to 28 U.S.C. §1367.

4.     Venue is proper in this District because the wrongful acts engaged in by defendants occurred in this District.

**PARTIES**

5.     Plaintiff is an individual that resides in the Northern District of Illinois. Plaintiff's cellular telephone phone number is 630-xxx-3271.

6.     Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a general partnership organized under the laws of the state of Delaware. It is comprised of two partners: Verizon Communications Inc. and Vodafone Group PLC. Verizon provides wireless communication services to businesses and consumers. Verizon's headquarters are in Bedminster, New Jersey.

7.     Defendant Vantage Sourcing, LLC ("Vantage Sourcing") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Dothan, Alabama.

8.     Defendant Miracle Financial, Inc. ("Miracle Financial") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Plymouth, Massachusetts.

9.     Defendant Credit Bureau of Napa County, Inc. D/B/A Chase Receivables ("Chase Receivables") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Sonoma, California.

**FACTUAL ALLEGATIONS**

10.     On February 12, 2011, plaintiff entered into an agreement with Verizon to provide wireless service for his own personal use.

11.     According to the terms of the agreement between plaintiff and Verizon, plaintiff was entitled to cancel the entire agreement within 30 days of activating service:

> You can cancel (if you're a new customer and not assuming another customer's service) WITHIN 30 DAYS of accepting. You'll still be responsible through that date for the new service and any charges associated with it.

12.     Unsatisfied with the service provided by Verizon, plaintiff canceled his cellular service on March 8, 2011, by porting his phone number to another wireless carrier.

13.     On March 9, 2011, plaintiff mailed a letter to Verizon confirming that he had canceled his service along with the final payment on the account. Exhibit A

14.     According to the United States Postal Service, Verizon received plaintiff's letter on March 11, 2011. Exhibit B

15.     Plaintiff enclosed a detailed itemization of the charges he was responsible for under the agreement.

16.     Verizon deposited plaintiff's final payment check and the funds cleared plaintiff's checking account.

17.     In light of the above facts, plaintiff thus canceled the entire agreement with Verizon.

18.     In the March 9, 2011, letter, plaintiff also expressly revoked any consent he might have provided to Verizon to call his cell phone number:

> Please remove my cell phone number, 630-xxx-3271, from your database as I do not wish to receive phone calls regarding this account. Please direct all future correspondence to the post office box address I have listed atop this letter.

19.     Notwithstanding the fact that plaintiff fulfilled the terms of the agreement, Verizon sent an invoice to plaintiff dated March 16, 2011, which attempted to charge plaintiff an

"early termination fee" in the amount of $340, a "restocking fee adjustment" in the amount of

$35, and various taxes computed based on the assessment of these additional charges.

20.     Plaintiff and Verizon never agreed to the assessment of such fees.

## VERIZON PLACES THE ACCOUNT WITH VANTAGE SOURCING

21.     Verizon assigned the alleged debt for collection with Vantage Sourcing in or

about March or April 2011.

22.     Any such debt that Vantage Sourcing would have been attempting to collect

would have been incurred for personal, family, or household purposes.

23.     Vantage Sourcing uses one or more "predictive dialers" as that term is defined by

the Federal Communications Commission.

24.     Vantage Sourcing's predictive dialer has the capacity to dial phone numbers

without human intervention.

25.     Vantage Sourcing's predictive dialer has the ability to play a message that has

been recorded ahead of time during a connected phone call.

26.     Vantage Sourcing's predictive dialer is an "automatic telephone dialing system"

as that term is defined by the TCPA and the Federal Communications Commission.

27.     In April 2011, Vantage Sourcing began placing calls to plaintiff's cell phone.

28.     Vantage Sourcing placed telephone calls to plaintiff's cell phone number 630-

xxx-3271 on at least the following occasions (all times are in C.S.T.):

  a.  04/21/2011 17:46

  b.  04/23/2011 20:48

  c.  04/27/2011 12:50

  d.  04/29/2011 11:19

e.      05/03/2011 15:45

f.      05/05/2011 16:15

g.      05/07/2011 15:34

h.      05/10/2011 14:12

i.      05/12/2011 14:15

j.      05/14/2011 17:17

k.      05/17/2011 18:29

l.      06/03/2011 11:11

m.      06/06/2011 11:56

n.      06/06/2011 18:14

o.      06/08/2011 15:51

p.      06/10/2011 12:06

q.      06/13/2011 16:05

r.      06/15/2011 13:46

s.      06/17/2011 14:13

t.      06/17/2011 16:19

u.      06/21/2011 11:02

v.      06/23/2011 10:14

w.      06/28/2011 11:01

29.     The above list of calls Vantage Sourcing placed to plaintiff is not inclusive. There may be other calls that will be ascertained through discovery.

30.     On information and belief, Vantage Sourcing used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

31.    A human being did not manually dial the calls that Vantage Sourcing placed to plaintiff's cell phone.

32.    Vantage Sourcing played a message during its phone calls to plaintiff that had been recorded ahead of time.

33.    Vantage Sourcing utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

34.    All of the calls that Vantage Sourcing placed to plaintiff's cell phone were made without plaintiff's consent.

35.    All of the messages played by Vantage Sourcing during their phone calls to plaintiff did not properly identify the caller's identity. This was the case on the June 28, 2011 phone call.

36.    All of the messages played by Vantage Sourcing during their phone calls to plaintiff failed to disclose that the communication was from a debt collector. This was the case on the June 28, 2011 phone call.

37.    Vantage Sourcing mailed a letter dated May 16, 2011, to plaintiff which attempted to collect an alleged debt owed to Verizon in the amount of $457.73. Plaintiff received this letter on May 19, 2011.

38.    Plaintiff disputed the alleged debt via a letter sent to Vantage Sourcing on June 10, 2011. Exhibit C

39.    According to the United States Postal Service, Vantage Sourcing received this letter on June 13, 2011. Exhibit D

40.    In the letter, plaintiff stated:

> I am in receipt of your collection notice dated May 16, 2011. I dispute the validity of the alleged debt. Please state with specificity how you arrived at the amount

you claim I owe. If you contend that I owe money for an early termination fee, please provide a copy of the agreement that I entered into that provides for such a fee.

Please direct all future correspondence to the address listed atop this letter.

41.     Notwithstanding the fact that Vantage Sourcing was in receipt of plaintiff's debt dispute and had not yet provided validation of the alleged debt, Vantage Sourcing continued to place collection calls to plaintiff's cell phone as specified in calls q-w specified in paragraph 28 of this complaint.

42.     Vantage Sourcing sent a letter to plaintiff dated June 28, 2011. The letter's postmark indicated a date of June 29, 2011.

43.     Plaintiff received this letter on July 2, 2011.

44.     The June 28, 2011, letter stated, among other things:

Our offices are in receipt of your letter of dispute and request for verification pursuant to 15 U.S.C. 1692g of the Fair Debt Collection Practices Act. Please be advised we have contacted our client, Verizon Wireless, who has investigated your claim and credits have been applied to your account. The corrected balance is listed below. In addition, please find further proof of the debt attached.

45.     Vantage Sourcing stated that the new debt amount was $59.93. The letter does not state how the alleged debt was reduced from $457.73 to $59.93.

46.     Enclosed with the letter were two account statements from Verizon dated March 16, 2011 and February 16, 2011. Vantage Sourcing highlighted in yellow certain figures from the statements but those figures do not add up to $59.93.

47.     Plaintiff was confused as to Vantage Sourcing's explanation of the new alleged debt amount.

## VERIZON PLACES THE ACCOUNT WITH MIRACLE FINANCIAL

48.     Verizon assigned the alleged debt for collection with Miracle Financial in or about July 2011.

49.     Any such debt that Miracle Financial would have been attempting to collect would have been incurred for personal, family, or household purposes.

50.     Miracle Financial sent a letter dated July 28, 2011, to plaintiff to collect an alleged debt owed to Verizon in the amount of $73.11.

51.     Plaintiff received this letter on August 4, 2011.

52.     In the letter, Miracle Financial claims that there is a principal balance due of $59.93 and "VZW collection fees" due in the amount of $13.18.

53.     Such a fee equals approximately 22 percent of the alleged principal balance due.

54.     Miracle Financial was not entitled or authorized to charge or attempt to collect such a fee.

55.     Plaintiff sent a letter of dispute to Miracle Financial on August 18, 2011.

56.     Plaintiff did not receive a letter from Miracle Financial which validated the debt.

57.     Upon information and belief, Miracle Financial did not send a validation letter to plaintiff.

## VERIZON PLACES THE ACCOUNT WITH CHASE RECEIVABLES

58.     Verizon assigned the alleged debt for collection with Chase Receivables in or about January or February 2012.

59.     Any such debt that Chase Receivables would have been attempting to collect would have been incurred for personal, family, or household purposes.

60.     Chase Receivables uses one or more "predictive dialers" as that term is defined by the Federal Communications Commission.

61.     Chase Receivable's predictive dialer has the capacity to dial phone numbers without human intervention.

62.     Chase Receivable's predictive dialer has the ability to play a message that has been recorded ahead of time during a connected phone call.

63.     Vantage Sourcing's predictive dialer is an "automatic telephone dialing system" as that term is defined by the TCPA and the Federal Communications Commission.

64.     Chase Receivables placed telephone calls to plaintiff's cell phone number 630-xxx-3271 on at least the following occasions (all times are in C.S.T.):

    a.      02/02/2012 11:40

    b.      02/03/2012 08:22

    c.      02/04/2012 10:19

    d.      02/06/2012 08:32

    e.      02/07/2012 19:22

    f.      02/09/2012 10:27

    g.      02/10/2012 17:38

    h.      02/11/2012 11:19

    i.      02/14/2012 10:13

    j.      02/15/2012 08:11

    k.      02/16/2012 10:59

65.     The above list of calls that Chase Receivables placed to plaintiff is not inclusive. There may be other calls that will be ascertained through discovery.

66.     On information and belief, Chase Receivables used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

67.     A human being did not manually dial the calls that were placed to plaintiff's cell phone listed above.

68.     Chase Receivables played a message during its phone calls to plaintiff that had been recorded ahead of time.

69.     Chase Receivables utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

70.     All of the calls that Chase Receivables placed to plaintiff's cell phone were made without plaintiff's consent.

71.     All of the messages played by Chase Receivables during their phone calls to plaintiff did not identify the caller's identity.

72.     Plaintiff did not receive a notice from Chase Receivables which explained the amount of the debt and the creditor to which the alleged debt was owed.

73.     Upon information and belief, Chase Receivables never sent a notice to plaintiff which explained the amount of the debt and the creditor to which the alleged debt was owed.

## COUNT I – FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

74.     Plaintiff incorporates paragraphs 1 – 73 above.

75.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

\*\*\*

**(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.**

76.     Defendant Vantage Sourcing violated 15 USC § 1692e(6) when it placed telephone calls to plaintiff and did not disclose the actual identity of the caller.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant Vantage Sourcing for:

      a.     Statutory damages;

      b.     Attorney's fees, litigation expenses and costs of suit;

      c.     Such other and further relief as the Court deems proper.

## COUNT II – FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

77.     Plaintiff incorporates paragraphs 1 – 73 above.

78.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**\*\*\***

**(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.**

79.     Defendant Vantage Sourcing violated 15 USC § 1692e(11) when it placed telephone calls to plaintiff and played prerecorded messages which did not contain the warning required by 15 USC § 1692e(11).

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant Vantage Sourcing for:

a.  Statutory damages;

b.  Attorney's fees, litigation expenses and costs of suit;

c.  Such other and further relief as the Court deems proper.

## COUNT III – FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

80.  Plaintiff incorporates paragraphs 1 – 73 above.

81.  The FDCPA, 15 USC § 1692g(b), provides, in pertinent part:

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection.**

82.  Defendant Vantage Sourcing violated 15 USC § 1692g(b) when it did not cease collection of the debt after it was in receipt of plaintiff's dispute of debt and request for verification letter.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant Vantage Sourcing for:

a.  Statutory damages;

b.  Attorney's fees, litigation expenses and costs of suit;

c.  Such other and further relief as the Court deems proper.

## COUNT IV – FAIR DEBT COLLECTION PRACTICES ACT (AGAINST MIRACLE FINANCIAL)

83.     Plaintiff incorporates paragraphs 1 – 73 above.

84.     The FDCPA, 15 USC § 1692f, provides, in pertinent part:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

**\*\*\***

85.     Defendant Miracle Financial violated 15 USC § 1692f(1) when it attempted to collect "VZW collection fees" in the amount of $13.18.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant Miracle Financial for:

      a.     Statutory damages;

      b.     Attorney's fees, litigation expenses and costs of suit;

      c.     Such other and further relief as the Court deems proper.

## COUNT V – FAIR DEBT COLLECTION PRACTICES ACT (AGAINST CHASE RECEIVABLES)

86.     Plaintiff incorporates paragraphs 1 – 73 above.

87.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**\*\*\***

**(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.**

88.     Defendant Chase Receivables violated 15 USC § 1692e(6) when it placed telephone calls to plaintiff and did not disclose the actual identity of the caller.

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant Chase Receivables for:

a.      Statutory damages;

b.      Attorney's fees, litigation expenses and costs of suit;

c.      Such other and further relief as the Court deems proper.

## COUNT VI – TELEPHONE CONSUMER PROTECTION ACT (AGAINST VERIZON AND VANTAGE SOURCING)

89.     Plaintiff incorporates paragraphs 1 – 73 above.

90.     The TCPA, 47 U.S.C. § 227 provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– * * ***

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

91.     Vantage Sourcing's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both an artificial

and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

92.     Verizon is also liable for the calls that Vantage Sourcing placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02 - 278, 23 FCC Rcd. 559 (January 4, 2008).

93.     Upon information and belief, Verizon was aware that Vantage Sourcing would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

94.     The defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

95.     Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and against defendants Vantage Sourcing and Verizon that provides the following relief:

      a.      Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

      b.      A permanent injunction prohibiting defendants from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message; and

      c.      Any other relief the Court finds just and proper.

## COUNT VII – TELEPHONE CONSUMER PROTECTION ACT (AGAINST VERIZON

## AND CHASE RECEIVABLES)

96.     Plaintiff incorporates paragraphs 1 – 73 above.

97.     The TCPA, 47 U.S.C. § 227 provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice– * * ***

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

98.     Chase Receivable's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both an artificial and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

99.     Verizon is also liable for the calls that Chase Receivables placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, GC Doc. 02 - 278, 23 FCC Rcd. 559 (January 4, 2008).

100.     Upon information and belief, Verizon was aware that Chase Receivables would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

101.     The defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

102.     Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and against defendants Chase Receivables and Verizon that provides the following relief:

      a.     Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful;

      b.     A permanent injunction prohibiting defendants from violating the TCPA in the future through calling cellular phones using an automatic telephone dialing system and/or a prerecorded voice message; and

      c.     Any other relief the Court finds just and proper.

## COUNT VIII – DECLARATORY ACTION (AGAINST VERIZON)

103.     Plaintiff incorporates paragraphs 1 – 73 above.

104.     There exists an actual controversy between Plaintiff and Verizon.

105.     Plaintiff believes he has fulfilled the terms of the agreement with Verizon and no further payments to Verizon should be made.

106.     Verizon continues to assert that a debt exists. It has hired debt collectors and has reported the alleged debt to a consumer reporting agency.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of himself and against defendant Verizon that provides the following relief:

a.      A declaration that plaintiff has fulfilled the terms of the agreement and does not owe money to Verizon.

b.      Any other relief the Court finds just and proper.

Respectfully Submitted,

Nicholas Martin

Nicholas Martin
*Pro Se*
PO Box 4030
Chicago, IL 60654-4030
(312) 725-9103

## JURY DEMAND

Plaintiff demands trial by jury for all facts so triable.

Nicholas Martin

# **Exhibit A**

CERTIFIED MAIL™

7006 2760 0002 9228 0823

VERIZON WIRELESS OPERATIONS SUPPORT
777 BIG TIMBER RD
ELGIN IL 60123-1488

NICHOLAS MARTIN
PO BOX 4030
CHICAGO IL 60654-4030

Nicholas Martin
PO Box 4030
Chicago, IL 60654-4030

March 9, 2011

**SENT VIA USPS CERTIFIED MAIL – 7006 2760 0002 9228 0823**
Verizon Wireless Operations Support
777 Big Timber Rd.
Elgin, IL 60123-1488

Account #: 286644590-00001

Ladies and Gentlemen:

I write to advise you that I have canceled my account with your company. I have canceled my account due to poor customer service and problems I have experienced with my Blackberry device.

Included with this letter is my final payment for this account. Attached please find a calculation that prorates my monthly service charges.

My Blackberry telephone (Bold 9650 / MEID HEX #: A0000025945492) and SIM card (Serial #: 064i0108931440337615529734) are being returned via FedEx to:

    VZW C/O
    New Breed Corporation
    4801 Mercantile Dr.
    Ft. Worth, TX 76000

The tracking number is: 874973588852

I have taken pictures of the Blackberry device as evidence of its excellent physical condition.

Please remove my cell phone number, 630-479-3271, from your database as I do not wish to receive phone calls regarding this account. Please direct all future correspondence to the post office box address I have listed atop this letter.

Sincerely,

Nicholas Martin

Verizon Wireless Account #: 286644590-00001

Service activated on February 16, 2011
Service canceled on March 8, 2011

21 Days of Service
28 Days in Billing Cycle
21/28 = 75% Prorated Amount

|  | Monthly Charges | Prorated Amount |
|---|---|---|
| 450 Minutes and Unlimited Texts | $59.99 | $44.99 |
| 18% Discount | -$10.80 | -$8.10 |
| E-Mail and Internet | $29.99 | $22.49 |
| 20% Discount | -$6.00 | -$4.50 |
| Visual Voice Mail | $2.99 | $2.24 |
| **Monthly Access Charge** | **$76.17** | **$57.13** |

|  | Monthly Charges | Prorated Amount |
|---|---|---|
| Federal Universal Service Charge | $1.16 | $0.87 |
| Regulatory Charge | $0.13 | $0.10 |
| Administrative Charge | $0.83 | $0.62 |
| **Verizon Wireless Surcharges** | **$2.12** | **$1.59** |

|  | Monthly Charges | Prorated Amount |
|---|---|---|
| Chicago 911 Fee | $2.50 | $1.88 |
| Illinois State Telecom Excise Tax | $6.39 | $4.79 |
| Chicago MTT | $6.39 | $4.79 |
| **Taxes and Governmental Surcharges** | **$15.28** | **$11.46** |

**Total Monthly Charge**                     **$93.57**         **$70.18**

# **Exhibit B**



**UNITED STATES**
**POSTAL SERVICE**

Date: 03/11/2011

Nicholas Martin:

The following is in response to your 03/10/2011 request for delivery information on your
Certified Mail(TM) item number 7006 2760 0002 9228 0823. The delivery record shows that
this item was delivered on 03/11/2011 at 09:24 AM in ELGIN, IL 60123 to C BOYD. The
scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service

# **<u>Exhibit C</u>**

CERTIFIED MAIL™

7006 2760 0002 9227 6543

VANTAGE SOURCING LLC
328 ROSS CLARK CIR
DOTHAN AL 36303-5834

NICHOLAS MARTIN
PO BOX 4030
CHICAGO, IL 60654-4030

Nicholas Martin
PO Box 4030
Chicago, IL 60654-4030

June 10, 2011

**SENT VIA USPS CERTIFIED MAIL #7006 2760 0002 9227 6543**
**RETURN RECEIPT REQUESTED**
Vantage Sourcing LLC
328 Ross Clark Circle
Dothan, AL 36303-5834

Vantage Sourcing Account #: 1028886

Ladies and Gentlemen:

I am in receipt of your collection notice dated May 16, 2011. I dispute the validity of the alleged debt. Please state with specificity how you arrived at the amount you claim I owe. If you contend that I owe money for an early termination fee, please provide a copy of the agreement that I entered into that provides for such a fee.

Please direct all future correspondence to the address listed atop this letter.

Sincerely,

Nicholas Martin

# <u>Exhibit D</u>



**UNITED STATES**
**POSTAL SERVICE.**

Date: 06/13/2011

Nicholas Martin:

The following is in response to your 06/10/2011 request for delivery information on your
Certified Mail(TM) item number 7006 2760 0002 9227 6543. The delivery record shows that
this item was delivered on 06/13/2011 at 09:34 AM in DOTHAN, AL 36303. The scanned
image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service