**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 2012 CV 5147 |
| | ) | Judge Ronald A. Guzman |
| vs. | ) | Magistrate Sheila M. Finnegan |
| | ) | |
| CELLCO PARTNERSHIP, d/b/a VERIZON | ) | |
| WIRELESS; VANTAGE SOURCING, LLC; | ) | |
| MIRACLE FINANCIAL, INC., and CREDIT | ) | |
| BUREAU OF NAPA COUNTY, INC., d/b/a/ | ) | |
| CHASE RECEIVABLES, | ) | |
| | ) | |
| Defendants. | ) | |

**VANTAGE SOURCING, LLC'S
ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT**

NOW COMES defendant Vantage Sourcing, LLC ("Vantage"), by its attorneys, Gozdecki, Del Giudice, Americus & Farkas LLP, and states as follows for its Answer and Affirmative Defenses to the Complaint filed by plaintiff, Nicholas Martin ("Plaintiff").

## INTRODUCTION

1.      Plaintiff Nicholas Martin, proceeding *pro se*, brings this action to secure redress against defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and implementing regulations and orders, and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). Plaintiff also requests that this court issue a declaratory judgment.

**ANSWER:**

Vantage admits Plaintiff is proceeding *pro se* and Plaintiff claims certain purported violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and specific provisions of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). Vantage denies it violated the TCPA and/or the FDCPA and denies the remaining allegations in this Paragraph.

1

2.  Plaintiff alleges that a wireless phone carrier attempted to charge plaintiff fees that were not contemplated by way of agreement or contract. The wireless phone carrier then hired debt collectors who violated laws in their attempts to collect a debt that wasn't actually due and owing.

**ANSWER:**

To the extent Plaintiff is referring to Vantage in this Paragraph, Vantage admits it worked with Verizon to collect an outstanding amount due to Verizon from Plaintiff. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

## JURISDICTION AND VENUE

3.  This Court has federal question jurisdiction over plaintiff's FDCPA and TCPA claims pursuant to 28 U.S.C. §1331. This court has supplemental jurisdiction over plaintiff's request for a declaratory judgment pursuant to 28 U.S.C. §1367.

**ANSWER:**

Vantage admits jurisdiction is proper. Vantage denies the remaining allegations of this Paragraph.

4.  Venue is proper in this District because the wrongful acts engaged in by defendants occurred in this District.

**ANSWER:**

Vantage admits venue is proper in the Northern District of Illinois, Eastern Division. Vantage denies the remaining allegations of this Paragraph.

## PARTIES

5.  Plaintiff is an individual that resides in the Northern District of Illinois. Plaintiff's cellular telephone phone number is 630-xxx-3271.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations in this Paragraph.

6.      Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a general partnership organized under the laws of the state of Delaware. It is comprised of two partners: Verizon Communications Inc. and Vodafone Group PLC.    Verizon provides wireless communication services to businesses and consumers. Verizon's headquarters are in Bedminster, New Jersey.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

7.      Defendant Vantage Sourcing, LLC ("Vantage Sourcing") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).  It has offices in Dothan, Alabama.

**ANSWER:**

Vantage admits it has offices in Dothan, Alabama.  Vantage admits it is in the debt collection business and services certain creditors in the collection of their outstanding accounts. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

8.      Defendant Miracle Financial, Inc. ("Miracle Financial") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).  It has offices in Plymouth, Massachusetts.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

9.      Defendant Credit Bureau of Napa County, Inc. D/B/A Chase Receivables ("Chase Receivables") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Sonoma, California.

**ANSWER:**

3

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

## FACTUAL ALLEGATIONS

10.     On February 12, 2011, plaintiff entered into an agreement with Verizon to provide wireless service for his own personal use.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

11.     According to the terms of the agreement between plaintiff and Verizon, plaintiff was entitled to cancel the <u>entire</u> agreement within 30 days of activating service:

> You can cancel (if you're a new customer and not assuming another customer's service) WITHIN 30 DAYS of accepting. You'll still be responsible through that date for the new service and any charges associated with it.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

12.     Unsatisfied with the service provided by Verizon, plaintiff canceled his cellular service on March 8, 2011, by porting his phone number to another wireless carrier.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

13.     On March 9, 2011, plaintiff mailed a letter to Verizon confirming that he had canceled his service along with the final payment on the account. <u>Exhibit A</u>.

**ANSWER:**

Vantage admits Exhibit A to the Complaint purports to be a letter from Plaintiff to Cellco Partnership, d/b/a Verizon Wireless ("Verizon"), dated March 9, 2011, in which Plaintiff attempts to cancel his wireless telephone service with Verizon. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

14.     According to the United States Postal Service, Verizon received plaintiff's letter on March 11, 2011. Exhibit B.

**ANSWER:**

Vantage admits Exhibit B to the Complaint purports to be a United Postal Service receipt, dated March 11, 2011, regarding delivery of Plaintiff's purported March 9, 2011 letter to Verizon. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

15.     Plaintiff enclosed a detailed itemization of the charges he was responsible for under the agreement.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

16.     Verizon deposited plaintiff's final payment check and the funds cleared plaintiff's checking account.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

17.     In light of the above facts, plaintiff thus canceled the entire agreement with

5

Verizon.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

18. In the March 9, 2011, letter, plaintiff also expressly revoked any consent he might have provided to Verizon to call his cell phone number:

> Please remove my cell phone number, 630-xxx-3271, from your database as I do not wish to receive phone calls regarding this account. Please direct all future correspondence to the post office box address I have listed atop this letter.

**ANSWER:**

Vantage admits Exhibit A of the Complaint contains the language stated in this Paragraph. Vantage denies Plaintiff revoked any consent to call his telephone number regarding his Verizon account. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

19. Notwithstanding the fact that plaintiff fulfilled the terms of the agreement, Verizon sent an invoice to plaintiff dated March 16, 2011, which attempted to charge plaintiff an "early termination fee" in the amount of $340, a "restocking fee adjustment" in the amount of $35, and various taxes computed based on the assessment of these additional charges.

**ANSWER**:

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

20. Plaintiff and Verizon never agreed to the assessment of such fees.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

## VERIZON PLACES THE ACCOUNT WITH VANTAGE SOURCING

21.    Verizon assigned the alleged debt for collection with Vantage Sourcing in or about March or April 2011.

**ANSWER:**

Vantage admits it started assisting Verizon with attempting to bring Plaintiff's Verizon account current during March or April, 2011. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether Plaintiff's outstanding account with Verizon resulted in a "debt" and whether Vantage is a "debt collector" as those terms are defined by the FDCPA. Vantage denies the remaining allegation in this Paragraph.

22.    Any such debt that Vantage Sourcing would have been attempting to collect would have been incurred for personal, family, or household purposes.

**ANSWER:**

Vantage admits it worked with Verizon to collect an outstanding amount due to Verizon from Plaintiff. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

23.    Vantage Sourcing uses one or more "predictive dialers" as that term is defined by the Federal Communications Commission.

**ANSWER:**

Vantage admits it uses certain telephone dialers in its collection business. Vantage neither admits nor denies whether its dialers are "predictive dialers" as defined by the Federal Communications Commission because that allegation calls for a legal conclusion.

24.    Vantage Sourcing's predictive dialer has the capacity to dial phone numbers

without human intervention.

**ANSWER:**

Vantage admits it uses certain telephone dialers in its business that have the capacity to dial telephone numbers without human intervention at the point of contact. Vantage neither admits nor denies whether its dialers are "predictive dialers" as defined by the Federal Communications Commission because that allegation calls for a legal conclusion.

25. Vantage Sourcing's predictive dialer has the ability to play a message that has been recorded ahead of time during a connected phone call.

**ANSWER:**

Vantage admits it uses certain telephone dialers in its business that have the capacity to play a recorded message. Vantage neither admits nor denies whether its dialers are "predictive dialers" as defined by the Federal Communications Commission because that allegation calls for a legal conclusion.

26. Vantage Sourcing's predictive dialer is an "automatic telephone dialing system" as that term is defined by the TCPA and the Federal Communications Commission.

**ANSWER:**

Vantage admits it uses certain telephone dialers in its business. Vantage neither admits nor denies whether its dialers are "predictive dialers" or "automatic telephone dialing systems" as defined by the TCPA and/or Federal Communications Commission because those allegations call for legal conclusions.

27. In April 2011, Vantage Sourcing began placing calls to plaintiff's cell phone.

**ANSWER:**

Vantage admits it started placing telephone calls to Plaintiff during April, 2011. Vantage

lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether the

telephone number it dialed to contact Plaintiff was a cellular telephone.

      28.    Vantage Sourcing placed telephone calls to plaintiff's cell phone number 630-xxx-3271 on at least the following occasions (all times are in C.S.T.):

|     |            |       |
|-----|------------|-------|
| a.  | 04/21/2011 | 17:46 |
| b.  | 04/23/2011 | 20:48 |
| c.  | 04/27/2011 | 12:50 |
| d.  | 04/29/2011 | 11:19 |
| e.  | 05/03/2011 | 15:45 |
| f.  | 05/05/2011 | 16:15 |
| g.  | 05/07/2011 | 15:34 |
| h.  | 05/10/2011 | 14:12 |
| i.  | 05/12/2011 | 14:15 |
| j.  | 05/14/2011 | 17:17 |
| k.  | 05/17/2011 | 18:29 |
| l.  | 06/03/2011 | 11:11 |
| m.  | 06/06/2011 | 11:56 |
| n.  | 06/06/2011 | 18:14 |
| o.  | 06/08/2011 | 15:51 |
| p.  | 06/10/2011 | 12:06 |
| q.  | 06/13/2011 | 16:05 |
| r.  | 06/15/2011 | 13:46 |
| s.  | 06/17/2011 | 14:13 |
| t.  | 06/17/2011 | 16:19 |
| u.  | 06/21/2011 | 11:02 |
| v.  | 06/23/2011 | 10:14 |
| w.  | 06/28/2011 | 11:01 |

**ANSWER:**

      Vantage admits it placed telephone calls to Plaintiff on or around the dates and times

stated in this Paragraph. Vantage lacks knowledge or information sufficient to form a belief as

to the truth or falsity of whether the stated phone number in this Paragraph was (a) the number

Vantage dialed because certain numbers are redacted, and (b) assigned to a cellular telephone

during the time at issue.

      29.    The above list of calls Vantage Sourcing placed to plaintiff is not inclusive. There

may be other calls that will be ascertained through discovery.

**ANSWER:**

Vantage admits it placed telephone calls to Plaintiff on or around the dates and times stated in Paragraph 28. Vantage also identifies 06/17/2011, 19:01 C.S.T., as a date and time Vantage called Plaintiff. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether further calls were placed to Plaintiff from Vantage.

30. On information and belief, Vantage Sourcing used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

**ANSWER:**

Vantage admits it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of the Complaint. Vantage admits it used certain telephone dialers to call Plaintiff. Vantage neither admits nor denies whether such dialers were/are "predictive dialers" as defined by the Federal Communications Commission because that allegation calls for a legal conclusion Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether the telephone number it dialed to contact Plaintiff was a cellular telephone.

31. A human being did not manually dial the calls that Vantage Sourcing placed to plaintiff's cell phone.

**ANSWER:**

Vantage admits that it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of the Complaint. Vantage admits certain of its dialers placed the telephone calls to Plaintiff without human intervention at the point of contact. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether the telephone number it dialed to contact Plaintiff was a cellular telephone.

32.     Vantage Sourcing played a message during its phone calls to plaintiff that had been recorded ahead of time.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether the telephone number it dialed to contact Plaintiff was a cellular telephone. Vantage admits the remaining allegations in this Paragraph.

33.     Vantage Sourcing utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

**ANSWER:**

Vantage admits it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of the Complaint.  Vantage admits its dialers played a recorded voice message to Plaintiff during Vantage's calls.  Vantage neither admits nor denies whether it used an "artificial voice," as defined by the TCPA, during its messages to Plaintiff because that allegation calls for a legal conclusion.

34.     All of the calls that Vantage Sourcing placed to plaintiff's cell phone were made without plaintiff's consent.

**ANSWER:**

Vantage admits it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of the Complaint.  Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether the telephone number it dialed to contact Plaintiff was a cellular telephone. Vantage denies the remaining allegations in this Paragraph.

35.     All of the messages played by Vantage Sourcing during their phone calls to plaintiff did not properly identify the caller's identity. This was the case on the June 28, 2011 phone call.

**ANSWER:**

Vantage admits it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of

the Complaint. Vantage denies the remaining allegations in this Paragraph.

36.    All of the messages played by Vantage Sourcing during their phone calls to plaintiff failed to disclose that the communication was from a debt collector. This was the case on the June 28, 2011 phone call.

**ANSWER:**

Vantage admits it placed certain telephone calls to Plaintiff as listed in Paragraph 28 of

the Complaint. Vantage denies the remaining allegations in this Paragraph.

37.    Vantage Sourcing mailed a letter, dated May 16, 2011, to plaintiff which attempted to collect an alleged debt owed to Verizon in the amount of $457.73. Plaintiff received this letter on May 19, 2011.

**ANSWER:**

Vantage admits it worked with Verizon to collect an outstanding amount due to Verizon

from Plaintiff. Vantage lacks knowledge or information sufficient to form a belief as to the truth

or falsity of when Plaintiff received the May 16 letter and whether Plaintiff's outstanding

account with Verizon resulted in a "debt" as defined by the FDCPA. Vantage denies any and all

allegations and/or interpretations inconsistent with its June 29 letter.

38.    Plaintiff disputed the alleged debt via a letter sent to Vantage Sourcing on June 10, 2011. Exhibit C.

**ANSWER:**

Plaintiff admits the letter attached to the Complaint as Exhibit C is dated June 10, 2011.

Vantage admits Plaintiff disputed the alleged outstanding amount he owed to Verizon. Vantage

lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

remaining allegations in this Paragraph.

39.     According to the United States Postal Service, Vantage Sourcing received this letter on June 13, 2011. Exhibit D.

**ANSWER:**

Vantage admits Exhibit D to the Complaint purports to be a United Postal Service receipt, dated June 13, 2011, regarding delivery of the Plaintiff's letter.  Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this Paragraph.

40.     In the letter, plaintiff stated:  I am in receipt of your collection notice dated May 16, 2011. I dispute the validity of the alleged debt.  Please state with specificity how you arrived at the amount you claim I owe.  If you contend that I owe money for an early termination fee, please provide a copy of the agreement that I entered into that provides for such a fee.

Please direct all future correspondence to the address listed atop this letter.

**ANSWER:**

Vantage admits Exhibit C to the Complaint contains the language in this Paragraph. Vantage admits it worked with Verizon to collect an outstanding amount due to Verizon from Plaintiff.  Vantage denies Plaintiff revoked his consent to be called on his telephone number regarding his Verizon Account.  Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this Paragraph.

41.     Notwithstanding the fact that Vantage Sourcing was in receipt of plaintiff's debt dispute and had not yet provided validation of the alleged debt, Vantage Sourcing continued to place collection calls to plaintiff's cell phone as specified in calls q-w specified in paragraph 28 of this complaint.

**ANSWER:**

Vantage admits it placed telephone calls to Plaintiff as listed in Paragraph 28 of the

Complaint. Vantage admits Plaintiff disputed his alleged outstanding account with Verizon. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations of this Paragraph.

42.    Vantage Sourcing sent a letter to plaintiff dated June 28, 2011. The letter's postmark indicated a date of June 29, 2011.

**ANSWER:**

Vantage admits it sent a letter to Plaintiff dated June 28, 2011. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in this Paragraph.

43.    Plaintiff received this letter on July 2, 2011.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

44.    The June 28, 2011, letter stated, among other things:

Our offices are in receipt of your letter of dispute and request for verification pursuant to 15 U.S.C. 1692g of the Fair Debt Collection Practices Act. Please be advised we have contacted our client, Verizon Wireless, who has investigated your claim and credits have been applied to your account. The corrected balance is listed below. In addition, please find further proof of the debt attached.

**ANSWER:**

Vantage admits the quoted text in this Paragraph was stated in Vantage's June 29, 2011 letter. Vantage denies any and all allegations and/or interpretations inconsistent with its June 29 letter.

45.    Vantage Sourcing stated that the new debt amount was $59.93. The letter does

not state how the alleged debt was reduced from $457.73 to $59.93.

**ANSWER:**

Vantage admits Plaintiff's account with Verizon was reduced to the $59.93. Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of whether Plaintiff's outstanding account with Verizon resulted in a "debt" as defined by the FDCPA. Vantage denies any and all allegations and/or interpretations inconsistent with its June 29 letter.

46. Enclosed with the letter were two account statements from Verizon dated March 16, 2011 and February 16, 2011. Vantage Sourcing highlighted in yellow certain figures from the statements but those figures do not add up to $59.93.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

47. Plaintiff was confused as to Vantage Sourcing's explanation of the new alleged debt amount.

**ANSWER:**

Vantage lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in this Paragraph.

**VERIZON PLACES THE ACCOUNT WITH MIRACLE FINANCIAL**

48. Verizon assigned the alleged debt for collection with Miracle Financial in or about July 2011.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

49. Any such debt that Miracle Financial would have been attempting to collect would have been incurred for personal, family, or household purposes.

15

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

50.     Miracle Financial sent a letter dated July 28, 2011, to plaintiff to collect an alleged debt owed to Verizon in the amount of $73.11.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

51.     Plaintiff received this letter on August 4, 2011.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

52.     In the letter, Miracle Financial claims that there is a principal balance due of $59.93 and "VZW collection fees" due in the amount of $13.18.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

53.     Such a fee equals approximately 22 percent of the alleged principal balance due.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

54.     Miracle Financial was not entitled or authorized to charge or attempt to collect such a fee.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

55.     Plaintiff sent a letter of dispute to Miracle Financial on August 18, 2011.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

56.     Plaintiff did not receive a letter from Miracle Financial which validated the debt.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

57.     Upon information and belief, Miracle Financial did not send a validation letter to plaintiff.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

## VERIZON PLACES THE ACCOUNT WITH CHASE RECEIVABLES

58.     Verizon assigned the alleged debt for collection with Chase Receivables in or about January or February 2012.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

59.     Any such debt that Chase Receivables would have been attempting to collect would have been incurred for personal, family, or household purposes.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

60.     Chase Receivables uses one or more "predictive dialers" as that term is defined by the Federal Communications Commission.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

61.     Chase Receivable's predictive dialer has the capacity to dial phone numbers without human intervention.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

62.     Chase Receivable's predictive dialer has the ability to play a message that has been recorded ahead of time during a connected phone call.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

63.     Vantage Sourcing's predictive dialer is an "automatic telephone dialing system" as that term is defined by the TCPA and the Federal Communications Commission.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

64.     Chase Receivables placed telephone calls to plaintiff's cell phone number 630-xxx-3271 on at least the following occasions (all times are in C.S.T.):

|   |   |   |
|---|---|---|
| a. | 02/02/2012 | 11:40 |
| b. | 02/03/2012 | 08:22 |
| c. | 02/04/2012 | 10:19 |
| d. | 02/06/2012 | 08:32 |
| e. | 02/07/2012 | 19:22 |
| f. | 02/09/2012 | 10:27 |
| g. | 02/10/2012 | 17:38 |
| h. | 02/11/2012 | 11:19 |
| i. | 02/14/2012 | 10:13 |
| j. | 02/15/2012 | 08:11 |
| k. | 02/16/2012 | 10:59 |

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

65.     The above list of calls that Chase Receivables placed to plaintiff is not inclusive. There may be other calls that will be ascertained through discovery.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

66.     On information and belief, Chase Receivables used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

67.     A human being did not manually dial the calls that were placed to plaintiff's cell phone listed above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

68.     Chase Receivables played a message during its phone calls to plaintiff that had been recorded ahead of time.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

69.     Chase Receivables utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

70.     All of the calls that Chase Receivables placed to plaintiff's cell phone were made without plaintiff's consent.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

71.     All of the messages played by Chase Receivables during their phone calls to plaintiff did not identify the caller's identity.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

72.     Plaintiff did not receive a notice from Chase Receivables which explained the amount of the debt and the creditor to which the alleged debt was owed.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

73.     Upon information and belief, Chase Receivables never sent a notice to plaintiff which explained the amount of the debt and the creditor to which the alleged debt was owed.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

## COUNT I — FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST VANTAGE SOURCING)

74.     Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage incorporates its Answers to Paragraphs 1 – 73 above.

75.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
**\* \* \***
**(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.**

**ANSWER:**

Vantage neither admits nor denies the allegations in this Paragraph because they call for

legal conclusions. To the extent an answer is required, Vantage denies the allegations contained

in this Paragraph accurately characterize the nature, scope, and obligations of the FDCPA when

read as a whole.

76.     Defendant Vantage Sourcing violated 15 USC § 1692e(6) when it placed
telephone calls to plaintiff and did not disclose the actual identity of the caller.

**ANSWER:**

Vantage denies the allegations in this Paragraph.

## COUNT II — FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST VANTAGE SOURCING)

77.     Plaintiff incorporates paragraphs 1— 73 above.

**ANSWER:**

Vantage incorporates its Answers to Paragraphs 1 – 73 above.

78.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
**\* \* \***
**(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.**

**ANSWER:**

Vantage neither admits nor denies the allegations in this Paragraph because they call for legal conclusions. To the extent an answer is required, Vantage denies the allegations contained in this Paragraph accurately characterize the nature, scope, and obligations of the FDCPA when read as a whole.

79.     Defendant Vantage Sourcing violated 15 USC § 1692e(11) when it placed telephone calls to plaintiff and played prerecorded messages which did not contain the warning required by 15 USC § 1692e(11).

**ANSWER:**

Vantage denies the allegations in this Paragraph.

### COUNT III — FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST VANTAGE SOURCING)

80.     Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage incorporates its Answers to Paragraphs 1 – 73 above.

81.     The FDCPA, 15 USC § 1692g(b), provides, in pertinent part:

**(b) Disputed debts**

**If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection.**

**ANSWER:**

Vantage neither admits nor denies the allegations in this Paragraph because they call for

legal conclusions. To the extent an answer is required, Vantage denies the allegations contained

in this Paragraph accurately characterize the nature, scope, and obligations of the FDCPA when

read as a whole.


82.     Defendant Vantage Sourcing violated 15 USC § 1692g(b) when it did not cease collection of the debt after it was in receipt of plaintiff's dispute of debt and request for verification letter.

**ANSWER:**

Vantage denies the allegations in this Paragraph.


## COUNT IV — FAIR DEBT COLLECTION PRACTICES ACT AGAINST MIRACLE FINANCIAL)

83.     Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

84.     The FDCPA, 15 USC § 1692f, provides, in pertinent part:

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.**

**\* \* \***

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

85.     Defendant Miracle Financial violated 15 USC § 1692f(1) when it attempted to collect "VZW collection fees" in the amount of $13.18.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

## COUNT V — FAIR DEBT COLLECTION PRACTICES ACT
## (AGAINST CHASE RECEIVABLES)

86.     Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

87.     The FDCPA, 15 USC § 1692e, provides, in pertinent part:

**A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**\* \* \***

**(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.**

23

**ANSWER:**

      Vantage offers no answer to this Paragraph because it is not directed to Vantage.

      88.    Defendant Chase Receivables violated 15 USC § 1692e(6) when it placed telephone calls to plaintiff and did not disclose the actual identity of the caller.

**ANSWER:**

      Vantage offers no answer to this Paragraph because it is not directed to Vantage.

## COUNT VI — TELEPHONE CONSUMER PROTECTION ACT (AGAINST VERIZON AND VANTAGE SOURCING)

      89.    Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

      Vantage incorporates its Answers to Paragraphs 1 – 73 above.

      90.    The TCPA, 47 U.S.C. § 227 provides in pertinent part:

      **(b) Restrictions on use of automated telephone equipment.**

      **(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**

      **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— * * ***

      **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

**ANSWER:**

      Vantage neither admits nor denies the allegations in this Paragraph because they call for

legal conclusions. To the extent an answer is required, Vantage denies the allegations contained in this Paragraph accurately characterize the nature, scope, and obligations of the TCPA when read as a whole.

91.     Vantage Sourcing's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both an artificial and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

**ANSWER:**

Vantage denies the allegations in this Paragraph.

92.     Verizon is also liable for the calls that Vantage Sourcing placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* GC Doc. 02 - 278, 23 FCC Rcd. 559 (January 4, 2008).

**ANSWER:**

Vantage denies the allegations in this Paragraph. Vantage offers no answer to this Paragraph regarding the allegations specifically directed to Verizon.

93.     Upon information and belief, Verizon was aware that Vantage Sourcing would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

**ANSWER:**

Vantage denies the allegations in this Paragraph. Vantage offers no answer to this Paragraph regarding the allegations directed to Verizon.

94.     The defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

**ANSWER:**

Vantage denies the allegations in this Paragraph. Vantage offers no answer to this Paragraph regarding the allegations directed to the other defendants.

95. Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

**ANSWER:**

Vantage denies the allegations in this Paragraph that specifically relate to Vantage. Vantage offers no answer to this Paragraph regarding the allegations directed to the other defendants.

## COUNT VII — TELEPHONE CONSUMER PROTECTION ACT
## (AGAINST VERIZON AND CHASE RECEIVABLES)

96. Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

97. The TCPA, 47 U.S.C. § 227 provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— * * ***

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; . . .**

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

98.     Chase Receivable's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both an artificial and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

99.     Verizon is also liable for the calls that Chase Receivables placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* GC Doc. 02 - 278, 23 FCC Rcd. 559 (January 4, 2008).

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

100.     Upon information and belief, Verizon was aware that Chase Receivables would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

101.     The defendants' calls were negligent, or alternatively, they were willful 47 U.S.C. §312(f)(1).

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

102.     Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

## COUNT VIII — DECLARATORY ACTION (AGAINST VERIZON)

103.     Plaintiff incorporates paragraphs 1 — 73 above.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

104.     There exists an actual controversy between Plaintiff and Verizon.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

105.     Plaintiff believes he has fulfilled the terms of the agreement with Verizon and no further payments to Verizon should be made.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

106.     Verizon continues to assert that a debt exists.  It has hired debt collectors and has reported the alleged debt to a consumer reporting agency.

**ANSWER:**

Vantage offers no answer to this Paragraph because it is not directed to Vantage.

WHEREFORE, Vantage prays for (1) the entry of a judgment in its favor against Plaintiff on Counts I, II, III and VI, (2) an award of costs and attorneys' fees incurred to defend against Counts I, II, and III pursuant to 15 U.S.C. § 1692k(a)(3), and (3) for such other and further relief as is just and appropriate.

## AFFIRMATIVE DEFENSES

Vantage respectfully requests this Court enter judgment for it and against Plaintiff for the reasons set forth above and based on the following defenses.  The defenses below incorporate the Answers stated above, and each defense incorporates the allegations contained in the others.  Vantage reserves the right to amend this Answer to add, delete or modify its affirmative defenses based on legal theories, facts and circumstances which may or will be developed through discovery or further legal analysis of Plaintiff's position in this litigation.  If, in fact, Vantage performed any wrongful act(s) under the FDCPA or TCPA, which is specifically denied, Vantage submits the following affirmative defenses:

### First Affirmative Defense

1.      Count VI is barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because pursuant to 47 U.S.C. § 227(b)(1)(A), Plaintiff provided express consent to be called on Plaintiff's cellular telephone at all times at issue.

### Second Affirmative Defense

1.      Pursuant to 15 U.S.C. § 1692k, Counts I, II and III are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), by the applicable statute of limitations period.

2.      Plaintiff's alleged claims first accrued on April 21, 2011.  Plaintiff did not file this lawsuit until June 27, 2012.

### Third Affirmative Defense

1.      Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because they were not brought in good faith, but are instead the product of intentional acts by Plaintiff to cause violations of the applicable laws when Plaintiff knew that he did not and would not suffer any real damages, in order to seek a windfall of statutory remedies under the applicable laws, rather than to redress a legitimate injury.

2.      Plaintiff currently has filed approximately 31 similar FDCPA and/or TCPA cases in the past four years, the most recent of which was filed within the last two weeks.

3.      On or around February 12, 2011, Plaintiff entered into an agreement with Verizon for wireless telephone service.

4.      Only 25 days later, on or around March 9, 2011 (*i.e.* not even one full billing cycle), Plaintiff unilaterally cancelled his wireless service with Verizon via letter. Plaintiff paid a portion of the amount due per his agreement with Verizon, but failed and refused to pay the entire amount. On information and belief, Plaintiff intentionally did not pay the entire amount in hopes that Verizon would attempt to collect the outstanding amount through formal collection efforts.

5.      Plaintiff's March 9 cancellation letter premeditatedly stated he did "not wish to receive phone calls regarding" his Verizon account. (Complaint, Exhibit A.)

6.      On or around April, 2011, Vantage started assisting Verizon with attempting to bring Plaintiff's Verizon account current. Around this time, Vantage starting placing telephone calls to Plaintiff to discuss his Verizon account.

7.      Plaintiff did not respond or act in any way to Vantage's efforts to contact Plaintiff regarding his Verizon account, and on information and belief, did so intentionally. Rather, Plaintiff meticulously catalogued each and every alleged contact from Vantage and allowed Vantage to continue its efforts to reach Plaintiff.

8.      Plaintiff now demands approximately $35,000 from Vantage as a result of Vantage's collection efforts. The amount owed to Verizon during Vantage's involvement in this matter was $59.93

## Fourth Affirmative Defense

1.      Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), by the doctrine of unclean hands because of Plaintiff's unlawful, careless, negligent, intentional and/or other wrongful conduct.

2.      Plaintiff's conduct represents his own attempt to manufacture FDCPA and TCPA violations by (a) contracting with Verizon for wireless service, (b) unilaterally cancelling his service after only 25 days, (c) purposefully not paying all the amounts due to Verizon with the hope that Verizon would commence formal collection efforts, (e) premeditatedly writing in Plaintiff's March 9, 2011 cancellation letter to Verizon that he did "not wish to receive phone calls regarding" his Verizon account, and (f) meticulously cataloging Vantage's efforts to contact Plaintiff about his Verizon account.

3.      Plaintiff has filed approximately 31 other lawsuits in the United States District Court for the Northern District of Illinois in the last four years relating to the FDCPA and/or

30

TCPA.  On information and belief, Plaintiff has received monetary payments to settle certain of these lawsuits.

4.      Plaintiff seeks equitable remedies, but has come to this Court having acted inequitably.

5.      In light of his own inequitable conduct, Plaintiff cannot seek equitable remedies.


## Fifth Affirmative Defense

1.      Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because Plaintiff failed, refused and/or neglected to take reasonable steps to mitigate his alleged damages.

2.      Plaintiff encouraged any alleged technical violation of the FDCPA and/or TPCA by Vantage.

3.      Tellingly, Plaintiff alleges approximately 23 specific dates and times in which Vantage purportedly contacted Plaintiff.  (Complaint, Paragraph 28.)

4.      Plaintiff did not act in any way to stop Vantage's efforts to contact Plaintiff.  Rather, Plaintiff meticulously catalogued each alleged contact and allowed Vantage to continue its activities in order to bolster his allegations in the instant lawsuit.

5.      Now, Plaintiff demands approximately $35,000 from Vantage for a $59.93 outstanding account with Verizon.


## Sixth Affirmative Defense

1.      Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because any alleged act(s) or omission(s) of Vantage that gave rise to Plaintiff's claims are the result of an innocent mistake.

2.      Vantage relies on the information provided to it by its creditor clients, *i.e.* Verizon. When a telephone number is provided to Vantage by its creditor clients, Vantage believes that the consumer, *i.e.* Plaintiff, has provided consent to that creditor client to be called on the number provided.

3.      Vantage was reasonably mistaken the telephone number Verizon provided to Vantage to contact Plaintiff was a cellular telephone number.

4.      Moreover, although Plaintiff did not revoke his consent to be contacted via his cellular telephone regarding his Verizon account, assuming *arguendo* he did revoke such consent, Plaintiff was reasonably mistaken such consent was, in fact, revoked.

### Seventh Affirmative Defense

1.  Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because pursuant to 15 U.S.C. § 1692k(c), to the extent that a violation is established, any such violation was not intentional and resulted from a bona fide error, notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

2.  On June 10, 2011, Plaintiff requested validation of the account Vantage was attempting to collect on behalf of Verizon.

3.  On June 28, 2011, Vantage mailed to Plaintiff a response letter that identified Verizon, validated the account information and provided proof of same.

4.  On that same day, Vantage placed a call to plaintiff regarding the Plaintiff's Verizon account.

5.  Any FDCPA violation under 15 U.S.C. § 1692k(e)(11) stemming from the fact that Vantage placed a telephone call to Plaintiff on the same day it sent its June 28 letter is the result of a bona fide error.

### Eighth Affirmative Defense

1.  Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because if Vantage performed any wrongful acts under the FDCPA or TCPA, which is specifically denied, such acts were not performed knowingly, willfully, purposefully, with malicious purpose, in bad faith, intentionally, recklessly or wantonly under either statute.

### Ninth Affirmative Defense

1.  Counts I, II, III and VI are barred, and/or diminished in terms of injury and/or awardable damage to Plaintiff (statutory or otherwise), because to the extent that the agreement between Plaintiff and Verizon require arbitration, Plaintiff's claims are subject to mandatory arbitration.

WHEREFORE, Vantage prays for (1) the entry of a judgment in its favor against Plaintiff on Counts I, II, III and VI, (2) an award of costs and attorneys' fees incurred to defend against Counts I, II, and III pursuant to 15 U.S.C. § 1692k(a)(3), and (3) for such other and further relief as is just and appropriate.

Respectfully submitted,

**VANTAGE SOURCING, LLC**

By:     /s/ Rick A. Del Giudice
        One of its Attorneys

Rick A. Del Giudice, Esq.
Dean C. Kalant, Esq.
**Gozdecki, Del Giudice, Americus
  & Farkas LLP**
One East Wacker Drive
Suite 1700
Chicago, Illinois 60601
Tel. (312) 782-5010
r.delgiudice@gozdel.com
d.kalant@gozdel.com