IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS MARTIN | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No.: 12-cv-5147 ) |
| CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS; VANTAGE SOURCING, LLC; and CREDIT BUREAU OF NAPA COUNTY, INC. d/b/a CHASE RECEIVABLES | ) ) ) ) ) Judge Ronald A. Guzman ) Magistrate Sheila M. Finnegan |
| Defendants. | ) ) ) |

**PLAINTIFF'S OPPOSITION TO CELLCO PARTNERSHIP'S MOTION TO DISMISS**

Cellco Partnership d/b/a/ Verizon Wireless ("Verizon") brings this motion arguing that plaintiff's claims under the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A) ("TCPA") should be dismissed as Verizon cannot be held responsible for the more than 35 improper robocalls made by the debt collectors Verizon hired in the pursuit of a non-existent debt. For the reasons stated below, Verizon's motion should be denied.[1]

Verizon is attempting to escape from liability under the TCPA even though the Federal Communications Commission's ("FCC") ruling on this very issue is pellucid. According to the FCC, "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the TCPA*, CG 02-278, at ¶ 10 (Jan. 4, 2008). [2] The FCC's ruling on this issue trumps statutory language and cannot be reviewed by this Court. *CE Design*

---

[1] Verizon's motion also requests that Count VIII of the complaint, which seeks a declaratory judgment, be dismissed. To narrow the issues of this case, plaintiff hereby withdraws his request for relief under Count VIII.
[2] The FCC's 2008 ruling is attached as Exhibit A.

1

*v. Prism Business Media, Inc.*, 606 F.3d 443, 448-49 (7th Cir. 2010).

   I.   **FACTS**

Plaintiff is an individual who resides in this District and has a cellular phone number assigned to him. Compl. ¶5. Defendant Verizon is a general partnership organized under the laws of the state of Delaware. It is in the business of providing wireless communication services to consumers, among other things. Compl. ¶6. In February 2011, plaintiff and Verizon entered into an agreement which would provide personal cellular phone service to plaintiff. Compl. ¶10. The agreement called for a 30 day trial period in which plaintiff could try out the wireless service and cancel for any reason. If plaintiff were to cancel within the 30 day trial period, he would only be obligated to pay a pro rata share of the service charges. Compl. ¶11. Plaintiff was not satisfied with the wireless service that Verizon provided and ported his cellular number to another carrier within the 30 day trial period. This had the effect of canceling cellular phone service. Compl. ¶12. Additionally, plaintiff confirmed the cancellation of his cellular phone service by informing Verizon in writing within the 30 day trial period. Compl. ¶13.

Plaintiff mailed an itemization to Verizon which contained a detailed listing of all pro rata charges he was responsible for under the service agreement and wrote a check to Verizon for the same amount. Compl. ¶15. The funds from that check cleared plaintiff's bank account and plaintiff thus fulfilled his side of the bargain under the service agreement. Compl. ¶16, 17.

Rather than honor its side of the agreement and part ways, Verizon attempted to collect from plaintiff an additional $457.73 by tacking on an "early termination fee," a "restocking fee adjustment," and additional taxes and fees. Compl. ¶19, 37. Such fees were illegitimate and plaintiff was not obligated to pay them. Compl. ¶20. Even though plaintiff tried the cellular service for only 21 days, Verizon believed it was entitled to collect an astonishing sum of $527.91. Compl. ¶36; Exhibit A to Complaint.

In furtherance of its goal of seeking money that was not legitimately due, Verizon hired debt collection agencies which utilized machines capable of automatically calling plaintiff on his cellular phone and delivering artificial and prerecorded messages. The use of such equipment is prohibited by the TCPA unless the user of the equipment can provide evidence that the called party provided her consent to be called using such equipment. Verizon's debt collectors used the prohibited equipment to call plaintiff's cellular telephone in excess of 35 times even though plaintiff made it clear to Verizon that he did not wish to be contacted on his cellular phone. Verizon reported to a consumer reporting agency that plaintiff had an unpaid balance. Compl. ¶106.

    II.    **MOTION TO DISMISS STANDARD**

When a court considers a motion to dismiss under Fed.R.Civ.P. 12(b)(6), all well-pleaded facts in the complaint must be accepted as true and all reasonable inferences must be construed in favor of the non-moving party. *See Killingsworth*, 507 F. 3d at 618. In order to state a claim for a relief, a plaintiff must only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Of course, the relief requested must be plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

    III.    **ARGUMENT**

    A.    **The FCC has already ruled that a creditor is responsible for calls made on its behalf and cannot be revisited by this Court.**

"Consumer complaints about abuses of telephone technology—for example, computerized calls to private homes—prompted Congress to pass the Telephone Consumer Protection Act of 1991 (TCPA or Act), 47 U.S.C. §227." *Mims v. Arrow Financial Services, LLC,* 565 U. S. ___ (2012). When Congress passed the TCPA, it placed authority in the FCC to promulgate rules and regulations it deemed necessary to carry out the intent and objectives of the

3

TCPA. 47 U.S.C. §227(b)(2) ("*The Commission shall prescribe regulations to implement the requirements of this subsection.*") Indeed, the FCC first exercised its notice-and-comment rulemaking authority in 1992. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, (Oct. 16, 1992).

In January 2008, the FCC released a declaratory ruling in response to ACA International's[3] petition to the FCC. *In re Rules and Regulations Implementing the TCPA*, CG 02-278, (Jan. 4, 2008). In its petition, the ACA requested that the FCC exempt debt collection calls from the provision in the TCPA which prohibits autodialed and prerecorded message calls (i.e., robocalls) to phone numbers assigned to cellular phones. Id at ¶8. The FCC found that debt collection calls were indeed covered by the portion of the TCPA which prohibits the use of autodialers and prerecorded messages to wireless numbers. Id at ¶11.

In its 2008 ruling, the FCC also expanded the definition of the statutory phrase "prior express consent" to include situations where a consumer simply provides his number to a creditor in connection with the creation of a debt obligation. Id. at ¶¶ 9-11. In so doing, the FCC recognized that the creditor would carry additional obligations under the TCPA and the FCC's rules.

> To ensure that creditors and debt collectors call only those consumers who have consented to receive autodialed and prerecorded message calls, we conclude that the <u>creditor</u> should be responsible for demonstrating that the consumer provided prior express consent. The <u>creditors</u> are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the <u>burden will be on the creditor</u> to show it obtained the necessary prior express consent.

Id. at ¶10 (emphasis added).

Verizon spends just one paragraph of its brief discussing the FCC's 2008 ruling and quotes the ruling clearly out of context. While the FCC's ruling did expand the definition of

---

[3] ACA International is a trade group that represents thousands of third party debt collectors, debt buyers, and creditors.

"prior express consent," it also put creditors on notice that they would be equally liable for the actions of their debt collectors if they were to violate the Commission's rules.

> Similarly, a <u>creditor</u> on whose behalf an autodialed or prerecorded message call is made to a wireless number <u>bears the responsibility</u> for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

Id. at ¶10 (emphasis added).

Verizon is attempting to reap only the benefits of the FCC's ruling while ignoring its responsibilities placed upon it as required by the FCC.[4] Indeed, Verizon's suggestion about how the Court should interpret the FCC's ruling would frustrate the Congressional objectives when it enacted the TCPA. Under the scheme advanced by Verizon, creditors like Verizon should be permitted to hire other parties to violate the TCPA while they remain shielded from all liability. It is a case like the present one that should remind creditors they too have an obligation to obey a federal law which has been designed to protect the privacy rights of Americans.

Most regulations issued by administrative agencies are subject to review pursuant to the *Chevron* two-step analysis. *CE Design, Ltd. v. Prism Business Media, Inc.*, 606 F.3d 443, 446 (7th Cir. 2010), citing *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). However, under the Administrative Orders Review Act, sometimes known as the "Hobbs Act," only "the court of appeals (other than the United States Court of Appeals for the Federal Circuit) has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of - … all final orders of the Federal Communication Commission." 28 U.S.C. §2342; *Prism Business Media, Inc.*, 606 F.3d at 446. Thus, while this Court maintains jurisdiction to enforce FCC rulings, it does not have the authority to review them. As a result, Verizon cannot now challenge the FCC ruling that held creditors are liable for the violations of

---

[4] Verizon is certainly aware of the FCC's 2008 ruling as it placed a comment into the record during the FCC's comment period in connection with the ACA's petition. Plaintiff attaches Verizon's comments as Exhibit B.

its debt collectors under the TCPA.

Lastly, it is of note that the opinion in a recent Seventh Circuit TCPA case agrees with plaintiff's interpretation of the FCC's 2008 ruling. *Soppet v. Enhanced Recovery Co., LLC*, 679 F. 3d 637 (7th Cir. 2012). In *Soppet*, the Court found that a debt collector violates the TCPA when it uses prohibited equipment to call a subscriber of a cell phone number who has not provided her consent to be called, even if the former owner of the cellular number provided consent to be called at that number. In listing various ways for debt collectors to remain compliant under the TCPA, the Seventh Circuit declared that "indemnity (in the debt collector's favor) may be automatic under ¶ 10 of the 2008 TCPA Order, which states that calls placed by a third-party collector on behalf of a creditor are treated as having been made by the creditor itself." Id. at 642 (parenthetical clarification added). Accordingly, the 2008 FCC ruling is directly on point that creditors should be held liable for debt collection calls made on their behalf.

    **B.**   **Thomas v. Taco Bell Corp. is not analogous to the instant case.**

The case upon which Verizon relies heavily in its brief, *Thomas v. Taco Bell Corp.*, is not analogous to the instant case at bar and Verizon's attempt to add additional legal clutter should be disregarded. In Thomas, the plaintiff received a text message on her cellular phone advertising a new product at a Taco Bell restaurant. Plaintiff sued both a Chicago based group representing Taco Bell franchisees and the parent company of the Taco Bell franchise, Taco Bell Corp. The court held that Taco Bell Corp. could not be found liable under the TCPA because it was not the party that planned, initiated, and controlled the text message campaign.

*Thomas* is differentiated from the instant case because *Thomas* involved unsolicited text messages sent to the cell phone of an individual in a telemarketing context, not improper

6

robocalls from a debt collector in the course of attempting to collect a non-existent debt. The *Thomas* court looked to the plain language of the TCPA because the FCC has issued no rulings on the topic of liability resulting from improper text messaging campaigns. As mentioned above, the FCC has already issued a ruling on the very issue which is the subject of Verizon's motion to dismiss. As a result, plaintiff need not allege the existence of a principal-agency relationship between Verizon and its debt collectors in support of a vicarious liability theory. Rather, all the plaintiff must allege in his complaint is that Verizon's debt collectors were working "on its behalf."

**CONCLUSION**

Verizon's request to be dismissed from this case should be denied. For the reasons explained above, Verizon should be held liable for the robocalls placed on its behalf and should not be permitted to escape its obligation to be compliant under the TCPA and the FCC's rules and regulations.

Respectfully submitted,

/s/ Nicholas Martin

Nicholas Martin
*Pro Se*
PO Box 4030
Chicago, IL 60654-4030
(312) 725-9103

## **VERIFICATION OF SERVICE**

    I, Nicholas Martin, pursuant to Fed.R.Civ.P. 5(a), verify that on September 10, 2012, I electronically filed the foregoing PLAINTIFF'S OPPOSITION TO CELLCO PARTNERSHIP'S MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which will serve electronic notice to all counsel of record.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2012.

                                                    /s/ Nicholas Martin