**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| NICHOLAS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12-cv-5147 |
| | ) | |
| CELLCO PARTNERSHIP d/b/a VERIZON | ) | Judge Ronald Guzman |
| WIRELESS, VANTAGE SOURCING, LLC, | ) | |
| MIRACLE FINANCIAL, INC., and CREDIT | ) | |
| BUREAU OF NAPA COUNTY, INC. d/b/a | ) | |
| CHASE RECEIVABLES, | ) | |
| | ) | |
| Defendants. | ) | |

## CELLCO PARTNERSHIP'S ANSWER, AFFIRMATIVE DEFENSES AND CROSS-CLAIMS

Defendant, Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by its attorneys Hal R. Morris and Elizabeth A. Thompson (Arnstein & Lehr, *of counsel*), states as follows for its Answer, Affirmative Defenses and Cross-Claims:

## INTRODUCTION

1.     Plaintiff Nicholas Martin, proceeding *pro se*, brings this action to secure redress against defendants for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and implementing regulations and orders, and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"). Plaintiff also requests that this court issued a declaratory judgment.

**ANSWER:**     Verizon admits that Plaintiff is *pro se* and that he has brought claims for alleged violations of the TCPA and FDCPA. Verizon denies that it violated the TCPA and denies the remaining allegations contained in this paragraph.

2.     Plaintiff alleges that a wireless phone carrier attempted to charge plaintiff fees that were not contemplated by way of agreement or contract. The wireless phone carrier then hired debt collectors who violated laws in their attempts to collect a debt that wasn't actually due and owing.

**ANSWER:**    Verizon denies that it attempted to charge plaintiff fees that were not contemplated by way of agreement or contract.  Verizon admits that it hired debt collectors to collect a debt, but denies that the debt was not due and owing.  Verizon denies that it hired debt collectors who violated the law.

## JURISDICTION AND VENUE

3.    This Court has federal question jurisdiction over plaintiff's FDCPA and TCPA claims pursuant to 28 U.S.C. §1331. This court has supplemental jurisdiction over plaintiffs request for a declaratory judgment pursuant to 28 U.S.C. §1367.

**ANSWER:**    Verizon admits that the Court has federal question jurisdiction over plaintiff's alleged FDCPA and TCPA claims pursuant to 28 U.S.C. § 1331.   Further answering, Verizon states that plaintiff's declaratory judgment claim has been dismissed.

4.    Venue is proper in this District because the wrongful acts engaged in by defendants occurred in this District.

**ANSWER:**    Verizon admits that venue is proper in the Northern District of Illinois, Eastern Division but denies the remaining allegations in this paragraph.

## PARTIES

5.    Plaintiff is an individual that resides in the Northern District of Illinois. Plaintiff's cellular telephone phone number is 630-xxx-3271.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

6.    Defendant Cellco Partnership d/b/a Verizon Wireless ("Verizon") is a general partnership organized under the laws of the state of Delaware. It is comprised of two partners:  Verizon Communications Inc. and Vodafone Group PLC. Verizon provides wireless communication services to businesses and consumers. Verizon's headquarters are in Bedminster, New Jersey.

**ANSWER:**    Verizon admits the allegations in this paragraph.

7.    Defendant Vantage Sourcing, LLC ("Vantage Sourcing") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Dothan, Alabama.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

8.    Defendant Miracle Financial, Inc. ("Miracle Financial") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Plymouth, Massachusetts.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.  Further answering, Miracle Financial, Inc. is no longer a defendant in this case by way of plaintiff's voluntary dismissal of Miracle Financial on July 20, 2012.

9.    Defendant Credit Bureau of Napa County, Inc. D/B/A Chase Receivables ("Chase Receivables") is a debt collector as that term is defined by 15 U.S.C. § 1692a(6). It has offices in Sonoma, California.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

## FACTUAL ALLEGATIONS

10.    On February 12, 2011, plaintiff entered into an agreement with Verizon to provide wireless service for his own personal use.

**ANSWER:**    Verizon admits that plaintiff entered into an agreement with it for Verizon to provide wireless services to plaintiff.  Verizon denies that this agreement was entered on February 12, 2011.  Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

11.     According to the terms of the agreement between plaintiff and Verizon, plaintiff was entitled to cancel the entire agreement within 30 days of activating service: You can cancel (if you're a new customer and not assuming another customer's service) WITHIN 30 DAYS of accepting. You'll still be responsible through that date for the new service and any charges associated with it.

**ANSWER:**     Verizon denies the allegations of this paragraph.

12.     Unsatisfied with the service provided by Verizon, plaintiff canceled his cellular service on March 8, 2011, by porting his phone number to another wireless carrier.

**ANSWER:**     Verizon admits that plaintiff canceled his cellular service with Verizon on March 8, 2011.  Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

13.     On March 9, 2011, plaintiff mailed a letter to Verizon confirming that he had canceled his service along with the final payment on the account. Exhibit A

**ANSWER:**     Verizon admits that Exhibit A to the Complaint is a letter from plaintiff to Verizon confirming that he canceled his service.  Verizon denies that the enclosed check was in full and final payment of the debt owed to Verizon.  Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

14.     According to the United States Postal Service, Verizon received plaintiff's letter on March 11, 2011. Exhibit B

**ANSWER:**     Verizon admits that Exhibit B to the Complaint is a United States Postal Service receipt.  Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

15.     Plaintiff enclosed a detailed itemization of the charges he was responsible for under the agreement.

**ANSWER:**     Verizon admits that Exhibit A contains an itemization of the charges he believed he was responsible for under the agreement.  Verizon denies that this computation was correct or pursuant to the parties' agreement and therefore denies the remaining allegations in this paragraph.

16.     Verizon deposited plaintiff's final payment check and the funds cleared plaintiff's checking account.

**ANSWER:**     Verizon admits that it deposited plaintiff's check and that the funds cleared plaintiff's checking account.  Verizon denies that the check was in full and final satisfaction of the debt owed to Verizon.

17.     In light of the above facts, plaintiff thus canceled the entire agreement with Verizon.

**ANSWER:**     This paragraph states a legal conclusion.  To the extent that an answer is required, Verizon admits that plaintiff canceled his agreement with Verizon.

18.     In the March 9, 2011, letter, plaintiff also expressly revoked any consent he might have provided to Verizon to call his cell phone number:

> Please remove my cell phone number, 630-xxx-3271, from your database as I do not wish to receive phone calls regarding this account. Please direct all future correspondence to the post office box address I have listed atop this letter.

**ANSWER:**     Verizon admits that Exhibit A to the Complaint contains the above quoted language.  Verizon denies that plaintiff revoked any consent to call his cellular telephone number regarding his Verizon account.   Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

19.     Notwithstanding the fact that plaintiff fulfilled the terms of the agreement, Verizon sent an invoice to plaintiff dated March 16, 2011, which attempted to charge plaintiff an "early termination fee" in the amount of $340, a "restocking fee adjustment" in the amount of $35, and various taxes computed based on the assessment of these additional charges.

**ANSWER:**     Verizon admits that it sent an invoice to plaintiff dated March 16, 2011 in an attempt to collect fees due and owing to it.  Verizon denies the remaining allegations in this paragraph.

20.     Plaintiff and Verizon never agreed to the assessment of such fees.

**ANSWER:**     Verizon denies the allegations in this paragraph.

### VERIZON PLACES THE ACCOUNT WITH VANTAGE SOURCING

21.     Verizon assigned the alleged debt for collection with Vantage Sourcing in or about March or April 2011.

**ANSWER:**     Verizon admits the allegations in this paragraph.

22.     Any such debt that Vantage Sourcing would have been attempting to collect would have been incurred for personal, family, or household purposes.

**ANSWER:**     This paragraph states a legal conclusion.  To the extent an answer is required, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

23.     Vantage Sourcing uses one or more "predictive dialers" as that term is defined by the Federal Communications Commission.

**ANSWER:**     This paragraph states a legal conclusion.  To the extent an answer is required, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

24.     Vantage Sourcing's predictive dialer has the capacity to dial phone numbers without human intervention.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

25.     Vantage Sourcing's predictive dialer has the ability to play a message that has been recorded ahead of time during a connected phone call.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

26.     Vantage Sourcing's predictive dialer is an "automatic telephone dialing system" as that term is defined by the TCPA and the Federal Communications Commission.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

27.     In April 2011, Vantage Sourcing began placing calls to plaintiff's cell phone.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

28.     28. Vantage Sourcing placed telephone calls to plaintiff's cell phone number 630-xxx-3271 on at least the following occasions (all times are in C.S.T.):

  a.     04/21/2011 17:46

  b.     04/23/2011 20:48

  c.     04/27/2011 12:50

  d.     04/29/2011 11:19

  e.     05/03/2011 15:45

  f.     05/05/2011 16:15

  g.     05/07/2011 15:34

  h.     05/10/2011 14:12

     i.     05/12/2011 14:15

     j.     05/14/2011 17:17

     k.     05/17/2011 18:29

     l.     06/03/2011 11:11

     m.     06/06/2011 11:56

     n.     06/06/2011 18:14

     o.     06/08/2011 15:51

     p.     06/10/2011 12:06

     q.     06/13/2011 16:05

     r.     06/15/2011 13:46

     s.     06/17/2011 14:13

     t.     06/17/2011 16:19

     u.     06/21/2011 11:02

     v.     06/23/2011 10:14

     w.     06/28/2011 11:01

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

29.    The above list of calls Vantage Sourcing placed to plaintiff is not inclusive. There may be other calls that will be ascertained through discovery.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

30.    On information and belief, Vantage Sourcing used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

31.    A human being did not manually dial the calls that Vantage Sourcing placed to plaintiff's cell phone.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

32.    Vantage Sourcing played a message during its phone calls to plaintiff that had been recorded ahead of time.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

33.    Vantage Sourcing utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

34.    All of the calls that Vantage Sourcing placed to plaintiff's cell phone were made without plaintiff s consent.

**ANSWER:**    Verizon denies the allegations in this paragraph.

35.    All of the messages played by Vantage Sourcing during their phone calls to plaintiff did not properly identify the caller's identity. This was the case on the June 28, 2011 phone call.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

36.    All of the messages played by Vantage Sourcing during their phone calls to plaintiff failed to disclose that the communication was from a debt collector. This was the case on the June 28, 2011 phone call.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

37.    Vantage Sourcing mailed a letter dated May 16, 2011, to plaintiff which attempted to collect an alleged debt owed to Verizon in the amount of $457.73. Plaintiff received this letter on May 19, 2011.

**ANSWER:**    Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

38.    Plaintiff disputed the alleged debt via a letter sent to Vantage Sourcing on June 10, 2011. Exhibit C

**ANSWER:**    Verizon admits that Exhibit C to the Complaint purports to be a letter sent to Vantage Sourcing disputing the debt.    Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

39.    According to the United States Postal Service, Vantage Sourcing received this letter on June 13, 2011. Exhibit D

**ANSWER:**    Verizon admits that Exhibit D to the Complaint purports to be a United States Postal Service's receipt.   Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

40.    In the letter, plaintiff stated:

> I am in receipt of your collection notice dated May 16, 2011. I dispute the validity of the alleged debt. Please state with specificity how you arrived at the amount you claim I owe. If you contend that I owe money for an early termination fee, please provide a copy of the agreement that I entered into that provides for such a fee. Please direct all future correspondence to the address listed atop this letter.

**ANSWER:** Verizon admits that this paragraph accurately quotes the language of the purported letter attached as Exhibit C to the Complaint. Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

41.     Notwithstanding the fact that Vantage Sourcing was in receipt of plaintiff's debt dispute and had not yet provided validation of the alleged debt, Vantage Sourcing continued to place collection calls to plaintiff's cell phone as specified in calls q-w specified in paragraph 28 of this complaint.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

42.     Vantage Sourcing sent a letter to plaintiff dated June 28, 2011. The letter's postmark indicated a date of June 29, 2011.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

43.     Plaintiff received this letter on July 2, 2011.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

44.     The June 28, 2011, letter stated, among other things:

> Our offices are in receipt of your letter of dispute and request for verification pursuant to 15 U.S.C. 1692g of the Fair Debt Collection Practices Act. Please be advised we have contacted our client, Verizon Wireless, who has investigated your claim and credits have been applied to your account. The corrected balance is listed below. In addition, please find further proof of the debt attached.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

45.     Vantage Sourcing stated that the new debt amount was $59.93. The letter does not state how the alleged debt was reduced from $457.73 to $59.93.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

46.     Enclosed with the letter were two account statements from Verizon dated March 16, 2011 and February 16, 2011. Vantage Sourcing highlighted in yellow certain figures from the statements but those figures do not add up to $59.93.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

47.     Plaintiff was confused as to Vantage Sourcing's explanation of the new alleged debt amount.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

## VERIZON PLACES THE ACCOUNT WITH MIRACLE FINANCIAL

48.     Verizon assigned the alleged debt for collection with Miracle Financial in or about July 2011.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily

dismissed from this case.  Notwithstanding the foregoing, Verizon admits the allegations

in this paragraph.

49.     Any such debt that Miracle Financial would have been attempting to collect would have been incurred for personal, family, or household purposes.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily

dismissed from this case.  Notwithstanding the foregoing, this paragraph states a legal

conclusion.    To the extent an answer is required, Verizon is without sufficient

information to form a belief as to the truth or falsity of the allegations in this paragraph.

50.     Miracle Financial sent a letter dated July 28, 2011, to plaintiff to collect an alleged debt owed to Verizon in the amount of $73.11.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case.  Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

51.     Plaintiff received this letter on August 4, 2011.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case.  Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

52.     In the letter, Miracle Financial claims that there is a principal balance due of $59.93 and "VZW collection fees" due in the amount of $13.18.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case.  Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

53.     Such a fee equals approximately 22 percent of the alleged principal balance due.

**ANSWER:**     On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case.  Notwithstanding the foregoing, Verizon admits that plaintiff has accurately calculated the ratio of principal to collection fees alleged in paragraph 52.  Verizon is without sufficient information to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

54.     Miracle Financial was not entitled or authorized to charge or attempt to collect such a fee.

**ANSWER:** On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case. Notwithstanding the foregoing, this paragraph states a legal conclusion. To the extent an answer is required, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

55. Plaintiff sent a letter of dispute to Miracle Financial on August 18, 2011.

**ANSWER:** On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case. Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

56. Plaintiff did not receive a letter from Miracle Financial which validated the debt.

**ANSWER:** On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case. Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

57. Upon information and belief, Miracle Financial did not send a validation letter to plaintiff.

**ANSWER:** On July 20, 2012, Defendant Miracle Financial was voluntarily dismissed from this case. Notwithstanding the foregoing, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

## VERIZON PLACES THE ACCOUNT WITH CHASE RECEIVABLES

58. Verizon assigned the alleged debt for collection with Chase Receivables in or about January or February 2012.

**ANSWER:** Verizon admits the allegations in this paragraph.

59. Any such debt that Chase Receivables would have been attempting to collect would have been incurred for personal, family, or household purposes.

**ANSWER:** This paragraph states a legal conclusion. To the extent that an answer is required, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

60.     Chase Receivables uses one or more "predictive dialers" as that term is defined by the Federal Communications Commission.

**ANSWER:** This paragraph states a legal conclusion. To the extent an answer is required, Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

61.     Chase Receivable's predictive dialer has the capacity to dial phone numbers without human intervention.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

62.     Chase Receivable's predictive dialer has the ability to play a message that has been recorded ahead of time during a connected phone call.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

63.     Vantage Sourcing's predictive dialer is an "automatic telephone dialing system" as that term is defined by the TCPA and the Federal Communications Commission.

**ANSWER:** Verizon is without sufficient information to form a belief as to the truth or falsity of the allegations in this paragraph.

64.     Chase Receivables placed telephone calls to plaintiffs cell phone number 630-xxx-3271 on at least the following occasions (all times are in C.S.T.):

      a.     02/02/2012 11:40

      b.     02/03/2012 08:22

c.     02/04/2012 10:19

d.     02/06/2012 08:32

e.     02/07/2012 19:22

f.     02/09/2012 10:27

g.     02/10/2012 17:38

h.     02/11/2012 11:19

i.     02/14/2012 10:13

j.     02/15/2012 08:11

k.     02/16/2012 10:59

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

65.     The above list of calls that Chase Receivables placed to plaintiff is not inclusive.  There may be other calls that will be ascertained through discovery.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

66.     On information and belief, Chase Receivables used one of their predictive dialers to make each of the phone calls to plaintiff listed above.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

67.     A human being did not manually dial the calls that were placed to plaintiffs cell phone listed above.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

68.     Chase Receivables played a message during its phone calls to plaintiff that had been recorded ahead of time.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

69.     Chase Receivables utilized technology which allows for the insertion of "artificial voice" in the messages it played during its phone calls to plaintiff.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

70.     All of the calls that Chase Receivables placed to plaintiff's cell phone were made without plaintiff's consent.

**ANSWER:**     Verizon denies the allegations in this paragraph.

71.     All of the messages played by Chase Receivables during their phone calls to plaintiff did not identify the caller's identity.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

72.     Plaintiff did not receive a notice from Chase Receivables which explained the amount of the debt and the creditor to which the alleged debt was owed.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

73.     Upon information and belief, Chase Receivables never sent a notice to plaintiff which explained the amount of the debt and the creditor to which the alleged debt was owed.

**ANSWER:**     Verizon is without sufficient information to form a belief as to the

truth or falsity of the allegations in this paragraph.

## COUNT I - FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

Count I is not directed to Verizon, therefore requires no answer.

## COUNT II - FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

Count II is not directed to Verizon, therefore requires no answer.

## COUNT III - FAIR DEBT COLLECTION PRACTICES ACT (AGAINST VANTAGE SOURCING)

Count III is not directed to Verizon, therefore requires no answer.

## COUNT IV - FAIR DEBT COLLECTION PRACTICES ACT (AGAINST MIRACLE FINANCIAL)

Count IV is not directed to Verizon, therefore requires no answer.

## COUNT V - FAIR DEBT COLLECTION PRACTICES ACT (AGAINST CHASE RECEIVABLES)

Count V is not directed to Verizon, therefore requires no answer.

## COUNT VI - TELEPHONE CONSUMER PROTECTION ACT (AGAINST VERIZON AND VANTAGE SOURCING)

89.     Plaintiff incorporates paragraphs 1 - 73 above.

**ANSWER:**     Verizon incorporates its answers to paragraphs 1-73 above as if fully stated here.

90.     The TCPA, 47 U.S.C. § 227 provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-**

18

> **(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice- * * ***
>
> > **(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ...**

**ANSWER:** Verizon admits that 47 U.S.C. § 227 is accurately quoted. Verizon

denies that it violated this section and the remaining allegations in this paragraph.

91.     Vantage Sourcing's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both an artificial and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

**ANSWER:**    This paragraph states a legal conclusion. To the extent an answer

is required, Verizon denies the allegations in this paragraph.

92.     Verizon is also liable for the calls that Vantage Sourcing placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of1991, GC Doc. 02 - 278, 23 FCC Rcd. 559 (January 4, 2008).

**ANSWER:**    This paragraph states a legal conclusion. To the extent an answer

is required, Verizon denies the allegations in this paragraph.

93.     Upon information and belief, Verizon was aware that Vantage Sourcing would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

**ANSWER:**    Verizon denies the allegations in this paragraph.

94.     The defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

**ANSWER:**    This paragraph is a legal conclusion.  To the extent an answer is

required, Verizon denies the allegations in this paragraph.

95.    Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

**ANSWER:**    Verizon denies the allegations in this paragraph.

## COUNT VII - TELEPHONE CONSUMER PROTECTION ACT (AGAINST VERIZON

## AND CHASE RECEIVABLES)

96.    Plaintiff incorporates paragraphs 1 - 73 above.

**ANSWER:**    Verizon incorporates its answers to paragraphs 1-73 above as if

fully stated here.

97.    The TCPA, 47 U.S.C. § 227 provides in pertinent part:

**(b) Restrictions on use of automated telephone equipment.**

**(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States-**

**(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice- * * ***

**(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call; ...**

**ANSWER:**    Verizon admits that 47 U.S.C. § 227 is accurately quoted.  Verizon

denies that it violated this section and the remaining allegations in this paragraph.

98.    Chase Receivable's phone calls to plaintiff's cell phone violated the TCPA because they were made using an automatic telephone dialing system and used both

an artificial and prerecorded voice. The phone calls to plaintiff's cell phone were not made for emergency purposes and they were not made with the prior express consent of plaintiff.

**ANSWER:**   This paragraph states a legal conclusion.  To the extent an answer

is required, Verizon denies the allegations in this paragraph.


99.    Verizon is also liable for the calls that Chase Receivables placed on its behalf which violate the TCPA. "Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, GC Doc. 02 - 278, 23 FCC Red. 559 (January 4, 2008).

**ANSWER:**   This paragraph states a legal conclusion.  To the extent an answer

is required, Verizon denies the allegations in this paragraph.


100.    Upon information and belief, Verizon was aware that Chase Receivables would utilize predictive dialers and artificial and prerecorded voice when placing phone calls to collect debts allegedly owed to Verizon.

**ANSWER:**   Verizon denies the allegations in this paragraph.


101.    The defendants' calls were negligent, or alternatively, they were willful. 47 U.S.C. §312(f)(1).

**ANSWER:**   This paragraph states a legal conclusion.  To the extent an answer

is required, Verizon denies the allegations in this paragraph.


102.    Plaintiff was damaged as a result of defendants' phone calls. He was needlessly bothered and was forced to utilize minutes from his cell phone plan's allotted minutes which could have been used for other purposes.

103.    Verizon denies the allegations in this paragraph.

### <u>COUNT VIII - DECLARATORY ACTION (AGAINST VERIZON)</u>

This Court has dismissed Count VIII of Martin's Complaint.

WHEREFORE, Defendant Cellco Partnership d/b/a Verizon Wireless respectfully

requests that this Court deny Plaintiff the relief requested, dismiss Counts VI and VII of

Plaintiff's Complaint with prejudice, tax all costs to Plaintiff, and grant such other relief as the Court deems fair and just.

## AFFIRMATIVE DEFENSES

Defendant, Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by its attorneys Hal R. Morris and Elizabeth A. Thompson (Arnstein & Lehr, *of counsel*), states as follows for its affirmative defenses to Plaintiff's Complaint:

### First Affirmative Defense: Prior Express Consent

1.     Counts VI and VII are barred because Plaintiff expressly consented to be contacted at his cellular telephone number pursuant to 47 U.S.C. § 227(b)(1)(A).

### Second Affirmative Defense: Unclean Hands/Lack of Good Faith

1.     Counts VI and VII are barred by Plaintiff's unclean hands and bad faith conduct.

2.     Plaintiff has filed approximately thirty-one similar FDCPA and TCPA lawsuits against various other entities.

3.     Many of Plaintiff's other cases allege facts strikingly similar to those alleged by Plaintiff in this case: Plaintiff purchased some type of service, Plaintiff terminated his service before the parties' contract ended, the defendant attempted to collect monies due and owing, Plaintiff sued the defendant for its collection attempts.  *See, e.g., Martin v. Sullivan, Dupre & Aldous, LLC, et al.*, 11-cv-859 (plaintiff purchased one-year gym membership in May 2010, canceled in July 2010 and sued various entities for their collection attempts).[1]

---

[1] See also Martin v. Redline Recovery Services, 08-cv-6153; Martin v. Weltman, Weinberg & Reis, Co., 08-cv-6181; Martin v. Valentine & Kebartas, Inc., 08-cv-06640; Martin v. Vengroff Williams & Assoc., Inc., 09-cv-00592; Martin v. Midland Credit Mgmt., 09-cv-05343; Martin v. J.C. Christensen & Assoc., Inc., 09-cv-05726; Martin v. Richard J. Boudreau & Assoc., LLC, 09-cv-5746; Martin v. Fosco Fullett

4. In this case, Plaintiff purchased service with Verizon and cancelled that service only twenty days later.

5. Upon information and belief, Plaintiff entered into his contract with Verizon for the sole purpose of canceling it, paying less than what was owed, and inducing Verizon and the other Defendants into the alleged violations of the FDCPA and TCPA.

6. Upon information and belief, Plaintiff never intended to honor the full term of his contract with Verizon. Plaintiff entered into this contract for the express purpose of creating a statutory windfall of damages.

7. Plaintiff now demands $51,000 from Verizon for Vantage and Chase's attempts to collect a minor but legally owing debt.

8. In light of Plaintiff's bad faith and unclean hands of inducing TCPA violations and then suing for them, he should not be permitted to recover statutory damages.

### **Third Affirmative Defense: Fraud**

1. Counts VI and VII are barred by Plaintiff's fraud in inducing Verizon to enter into a contract with Plaintiff for which Plaintiff was not eligible.

2. Plaintiff purchased his cellular device and service from Verizon by way of the State of Illinois and Local Government Employee website, located at https://www.vzwshop.com/b2e/url/kUgkCGLvqnl=?CMP+EMC-WLS-B-S-DIR-1.

---

Roselund, 09-cv-06236; Martin v. West Asset Mgmt., Inc., 09-cv-08067; Martin v. PPP, Inc., 10-cv-00140; O'Brien, et al. v. Panino's, Inc., 10-cv-02991; Martin v. LVNV Funding, LLC, 10-cv-03300; Martin v. CCH Inc., 10-cv-03494; Diparvine, et al. v. Ripple 1471 Inc., 10-cv-05114; Martin v. Piknick Kafe, Inc., 10-cv-05142; Martin v. Ripple 1471 Inc., 10-cv-5144; Martin v. Michael Ramierez, 10-cv-05242; Vance, et al. v. Bureau of Collection Recovery, LLC, 10-cv-6324; Martin v. Bureau of Collection Recovery, LLC, 10-cv-07725; Martin v. Fail Safe Taxes, LLC, 11-cv-00155; Martin v. Automated Fin., LLC, 11-cv-00525; Martin v. Midland Funding, LLC, 11-cv-03104; Martin v. Leading Edge Recovery Solutions, LLC, 11-cv-05886; Martin v. Asset Acceptance Capital Corp., 11-cv-06256; Martin v. Credit Protection Ass'n, LP, 11-cv-06828; Martin v. Dun & Bradstreet, Inc., 12-cv-00215; Martin v. Duncan, 12-cv-03881; Martin v. Tax Works, Inc., 12-cv-05485; Martin v. Miracle Fin., Inc., 12-cv-6001; Martin v. Comcast Corp., 12-cv-06421.

3.      The State of Illinois and Local Government Employee website allows government employees to receive a discount off certain products and cellular service from Verizon (the "government discount").   Its use is limited to employees of the government.

4.      Upon information and belief, Plaintiff is not an employee entitled to receive the government discount.

5.      By claiming that he was entitled to the government discount, Plaintiff stated a material misrepresentation regarding his eligibility for reduced service charges from Verizon.

6.      Thereafter, upon information and belief, Plaintiff canceled his contract with Verizon for the express purpose of creating a debt he would not pay.   By doing so, Plaintiff hoped to induce Verizon to violate the TCPA.

7.      Plaintiff should not be permitted to recover under the TCPA for violations that occurred by way of his own fraud in inducing Verizon to enter into a contract with him for which he was not eligible.

## Fourth Affirmative Defense: Failure to Mitigate Damages

1.      Counts VI and VII are barred by Plaintiff's failure to mitigate damages.

2.      Plaintiff allowed his cellular phone to be called at least thirty-four times by Vantage and Chase, meticulously detailing each call.

3.      Plaintiff could have taken affirmative steps to mitigate his damages by answering the phone calls earlier and requesting that the caller cease calling his number.

4.      Upon information and belief, instead of mitigating damages, Plaintiff purposefully induced further phone calls in an attempt to be entitled to a larger damages award.

## Fifth Affirmative Defense: Breach of Contract

1.      Counts VI and VII are barred by Plaintiff's breach of the parties' contract.

2.      Verizon's Terms and Conditions, which were accepted by Plaintiff, state "If you're a Postpay customer, you can dispute your bill within 180 days of receiving it, but unless otherwise provided by law or unless you're disputing charges because your wireless device was lost or stolen, you still have to pay all charges until the dispute is resolved."

3.      Plaintiff was a Postpay customer.

4.      Plaintiff's wireless device was not lost or stolen.

5.      Plaintiff's contract with Verizon required him to pay any disputed charges until the dispute is resolved.  However, Plaintiff did not pay the disputed charges.

6.      By not paying the disputed charges, Plaintiff breached his contract with Verizon.

7.      If Plaintiff had paid the disputed charges consistent with his contractual obligations, Vantage and Chase would not have taken actions to attempt to collect the debt.

## Sixth Affirmative Defense: Arbitration

1.      Counts VI and VII are barred by the arbitration clause in the parties' contract.

2.      That contract states:

> YOU AND VERIZON BOTH AGREE TO RESOLVE DISPUTES
> ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT.

THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT, EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT RESULTS FROM THIS AGREEMENT OR FROM THE SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR BETTER BUSINESS BUREAU ("BBB")….

3.      Plaintiff violated the arbitration agreement by bringing his claims against Verizon in federal court.

4.      Plaintiff's suit is one that results from the parties' agreement and/or the services he received from Verizon.

5.      Plaintiff's claims are subject to mandatory arbitration and cannot be heard by this Court.

### CROSS-PLAINTIFF'S CROSS CLAIMS AGAINST VANTAGE SOURCING, LLC AND CREDIT BUREAU OF NAPA COUNTY, INC. D/B/A CHASE RECEIVABLES

Defendant/Cross-Plaintiff Cellco Partnership d/b/a Verizon Wireless ("Verizon"), by its attorneys Hal R. Morris and Elizabeth A. Thompson (Arnstein & Lehr, LLP, *of counsel*), for its cross claims against Defendants/Cross-Defendants Vantage Sourcing, LLC ("Vantage") and Credit Bureau of Napa County, Inc. d/b/a Chase Receivables ("Chase"), states as follows:

**COUNT I: Declaratory Judgment against Vantage Sourcing, LLC**

1.      On June 27, 2012, Plaintiff Nicholas Martin brought suit against Verizon, Vantage and Chase for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (the "TCPA"), based upon calls made by Vantage and Chase in an attempt to collect a debt from Plaintiff. Vantage and Chase are required, under contractual indemnity provisions, to provide defense costs and to indemnify Verizon for Plaintiff's claims.

**PARTIES**

2.      Cellco Partnership d/b/a Verizon Wireless is a Delaware general partnership with its principal place of business in Bedminster, New Jersey.

3.      Vantage Sourcing, LLC is a Tennessee limited liability company with its principal place of business in Dothan, Alabama.

4.      Chase is a California corporation with its principal place of business in Sonoma, California.

**JURISDICTION AND VENUE**

5.      Jurisdiction over Verizon's claims for declaratory judgment is proper pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

**FACTUAL ALLEGATIONS**

7.      Plaintiff purchased cellular telephone service from Verizon Wireless in February of 2011.

8.      At the time Plaintiff purchased such service, Verizon's terms and conditions provided that its customers could cancel their contract within fourteen days of accepting

service without incurring an early termination fee.  Specifically, that agreement provides: "you can cancel a line of service within 14 days of accepting without having to pay an early termination fee as long as you return any equipment you purchased at the time you accepted, but you'll still have to pay for your Service through that date."

9.      Plaintiff activated his cellular service with Verizon on February 16, 2011.

10.     Plaintiff unilaterally canceled his cellular service with Verizon on March 8, 2011, twenty days later.  This cancelation was not within the fourteen day grace period.

11.     Accordingly, Verizon assessed certain fees, including an early termination fee, to Plaintiff with regard to his termination of the contract.

12.     Verizon sent an invoice to Plaintiff on March 16, 2011 reflecting the fees owed.

13.     Plaintiff failed to pay the March 16, 2011 invoice.

14.     Verizon assigned Plaintiff's debt to be collected first by Vantage and then by Chase.  The collection of this debt by Vantage and Chase was governed by contracts that Verizon had with each party.  These contracts both contain indemnification provisions.

15.     Vantage and Chase then allegedly used predictive dialers to call Plaintiff multiple times to collect Verizon's debt.

16.     As a result of Vantage and Chase's phone calls, Plaintiff brought suit against Verizon under the TCPA.

17.     In this suit, Plaintiff seeks statutory damages of $1,500 per call from Verizon. Verizon denies that it violated the TCPA.

18.     Verizon's relationship with Vantage is governed by a Master Agreement and an amendment thereto.

19.     Verizon and Vantage entered into the Master Agreement on or about March 27, 2006.

20.     The Master Agreement states, in part:

> Company shall defend, indemnify and hold harmless Verizon Wireless, its parents, subsidiaries and affiliates, and its and their respective directors, officers, partners, employees, agents, successors and assigns ("Indemnified Parties") from any claims, demands, lawsuits, damages, liabilities, expenses (including, but not limited to, reasonable fees and disbursements of counsel and court costs), judgments, settlements and penalties of every kind ("Claims"), that may be made: … (c) by anyone in connection with or based upon Services (including products furnished hereunder) provided by Company and its subcontractors, if any, or contemplated by this Agreement, including Claims regarding the adequacy of any disclosures, instructions or warnings related to any such Services; and (d) under any federal securities laws or under any other statute, at common law or otherwise arising out of or in connection with the performance by Company contemplated by this Agreement or any information obtained in connection with such performance.  The foregoing indemnification shall apply whether Company or an Indemnified Party defends such Claim and whether the Claim arises or is alleged to arise out of the sole acts or omissions of the Company (and/or any subcontractor of Company) or out of the concurrent acts or omissions of Company (and/or any subcontractor of Company) and any Indemnified Parties.  Company further agrees to bind its subcontractors, if any, to similarly indemnify, hold harmless, and defend the Indemnified Parties.

21.     The Master Agreement defines "Company" as "Vantage Sourcing, LLC."

22.     Vantage and Verizon are also parties to "Amendment Number 1" to the Master Agreement, which replaces and changes certain provisions of the Master Agreement.

23.      That Amendment further states:

> Supplier and all approved subcontractors shall comply with the provisions of all applicable federal, state, county and local laws,

ordinances, regulations, rules, codes and orders (collectively "law") in performance of this Agreement, including but not limited to any laws pertaining to employment of labor, hours of labor, health and safety, payment of wages, payment of taxes, employment eligibility status and verification (I-9), and the safeguarding, protection, and disposal of personal or similar information used, maintained, and/or accessed on Verizon's behalf… Supplier and any approved subcontractor shall indemnify and hold Verizon harmless against all Claims (as defined in Section 22, Indemnification) arising out of or related to such noncompliance.

24. Amendment Number 1 to the Master Agreement defines "Supplier" as "Vantage Sourcing, LLC."

25. On August 29, 2012, Verizon's claims manager requested that Vantage's insurance provider, Argonaut Great Central, defend Verizon, pay Verizon's defense costs and indemnify Verizon for Plaintiff's suit. A copy of the August 29, 2012 letter is attached as Exhibit A.

26. Verizon never received a response to the August 29, 2012 letter.

27. On October 12, 2012, Verizon sent a second letter to Vantage, again requesting that Vantage honor the parties' agreement by defending Verizon, paying Verizon's defense costs and indemnifying Verizon. A copy of the October 12, 2012 letter is attached as Exhibit B.

28. Verizon never received a response to the October 12, 2012 letter.

29. Under the Master Agreement and Amendment Number 1, Vantage is required to defend Verizon, pay Verizon's defense costs, as well as indemnify and hold Verizon harmless for Plaintiff's claims.

30. Vantage has failed to provide a defense for Verizon, to pay Verizon's attorneys' fees, or to promise to indemnify Verizon if Verizon is found liable in this lawsuit.

31.     Verizon has complied with its obligations under the Master Agreement and Amendment Number 1.

32.     There exists an actual controversy between Verizon and Vantage regarding Vantage's obligations under the Master Agreement and Amendment Number 1.

WHEREFORE, Cellco Partnership d/b/a Verizon Wireless requests that this Court enter judgment in favor of Verizon declaring that Vantage Sourcing LLC is required to defend Verizon in this matter; declaring that Vantage must pay Verizon's attorneys' fees in this matter, including the fees it has incurred and will incur in defending Plaintiff's claims and in prosecuting Verizon's cross-claim against Vantage; declaring that Vantage is required to indemnify Verizon for any award Plaintiff receives in his action against Verizon; and for any further relief this Court deems equitable and just.

### COUNT II: Declaratory Judgment against Credit Bureau of Napa Valley d/b/a Chase Receivables

1.     Verizon incorporates paragraph 1-17 of Count I above.

2.     Verizon's relationship with Chase is governed by an Agreement for Collection Services.

3.     Verizon and Chase entered into the Agreement for Collection Services on or about September 1, 2007.

4.     The Agreement for Collection Services states, in part:

> Supplier shall defend, indemnify and hold harmless Verizon, its parents, subsidiaries and Affiliates, and its and their respective directors, officers, partners, employees, agents, successors and assigns ("Indemnified Parties") from and against any claims, demands, lawsuits, damages, liabilities, loss, costs or expenses (including, but not limited to, reasonable fees and disbursements of counsel and court costs), judgments, settlements and penalties of every kind ("Claims"), that may

be made:… (iii) by anyone in connection with or based upon Services provided by Supplier and its subcontractors, if any, or contemplated by this Agreement, including Claims regarding the adequacy of any disclosures related to any such Services; and (iv) under any federal securities laws or under any other statute, at common law or otherwise arising out of or in connection with the performance of Services by Supplier contemplated by this Agreement or any information obtained in connection with such performance of Services. The foregoing indemnification shall apply whether the Claim arises or is alleged to arise out of the sole acts or omissions of the Supplier (and/or any subcontractor of Supplier) or out of the concurrent acts or omissions of Supplier (and/or any subcontractor of Supplier) and any Indemnified Parties. Supplier further agrees to bind its subcontractors, if any, to similarly indemnify, hold harmless, and defend the Indemnified Parties.

5. The Agreement for Collection Services defines "Supplier" as "Credit Bureau of Napa County Incorporated, d/b/a Chase Receivables."

6. That Agreement for Collection Services further states:

Supplier and any subcontractors shall comply with the provisions of all applicable federal, state, county and local laws, ordinances, regulations, rules, codes and orders (collectively "law") in performance of this Agreement. Such law shall include, but not be limited to: laws pertaining to employment of labor, hours of labor, health and safety, and payment of wages; payment of taxes; the Fair Debt Collection Practices Act; the Fair Credit Reporting Act; the Electronic Fund Transfers Act; state and local laws regarding the collection of debt or reporting of same; the NACHA Operating Rules, any operating rules of any credit card association; the Payment Card Industry (PCI) Compliance Standards, and laws pertaining to the safeguarding, protection and disposal of personal or similar information used, maintained and/or accessed on Verizon's behalf, such as California Civil Code Section 1798.82 and the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159…. Supplier shall indemnify and hold Verizon harmless from all claims, losses, fines or penalties, including reasonable attorneys' fees, arising out of or related to non-compliance with this paragraph.

7. On August 29, 2012, Verizon's claims manager requested that Chase's insurance provider, Hartford Insurance Company, defend Verizon, pay Verizon's

defense costs and indemnify Verizon for Plaintiff's suit. A copy of the August 29, 2012 letter is attached as Exhibit C.

8.      Verizon never received a response to the August 29, 2012 letter.

9.      On October 16, 2012, Verizon sent a second letter to Chase, again requesting that Chase honor the parties' agreement by defending Verizon, paying Verizon's defense costs and indemnifying Verizon. A copy of the October 16, 2012 letter is attached as Exhibit D.

10.     Verizon never received a response to the October 16, 2012 letter.

11.     Under the Agreement for Collection Services, Chase is required to defend Verizon in this matter, pay Verizon's defense costs, as well as indemnify and hold Verizon harmless for Plaintiff's claims.

12.     Chase has failed to provide a defense for Verizon, to pay Verizon's attorneys' fees, or to promise to indemnify Verizon if Verizon is found liable in this lawsuit.

13.     Verizon has complied with its obligations under the Agreement for Collection Services.

14.     There exists an actual controversy between Verizon and Chase regarding Chase's obligations under the Agreement for Collection Services.

WHEREFORE, Cellco Partnership d/b/a Verizon Wireless requests that this Court enter judgment in favor of Verizon declaring that Credit Bureau of Napa County d/b/a Chase Receivables is required to defend Verizon in this matter; declaring that Chase is required to pay Verizon's reasonable attorneys' fees in this matter, including the fees it has incurred and will incur in defending Plaintiff's claims and in prosecuting Verizon's cross-claim against Chase; declaring that Chase is required to indemnify

Verizon for any award Plaintiff receives in his action against Verizon; and for any further

relief this Court deems equitable and just.

Respectfully submitted,

Cellco Partnership

By:/s/ Elizabeth A. Thompson
One of its attorneys

Hal R. Morris
Elizabeth A. Thompson
Arnstein & Lehr, *of counsel*
120 South Riverside Plaza
Suite 1200
Chicago, IL 60606
(312) 876-7100

## Certificate of Service

The undersigned, an attorney, certifies that she caused the foregoing Answer to Counts VI and VII of Complaint to be served by electronic mail, pursuant to the election to receive notice of filings through e-mail, on Nicholas Martin, at n.m.martin@hotmail.com, and that she electronically filed the same with the Clerk of Court by using the CM/ECF system, which sent notification of such filing to all parties of record, on or before 5:00 p.m. on October 31, 2012.

/s/ Elizabeth A. Thompson

10487842.1